**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re SitusAMC Holdings Corporation Data Breach Litigation* | Case No.: 1:25-cv-09748-LJL<br><br>**AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Joseph Constantino, Linda Rae Maccarone, Lawrence Girard Maccarone, Lorena Claxton, Robert Pak, and David Reisender ("Plaintiffs") bring this Amended Consolidated Class Action Complaint against Defendant SitusAMC Holdings Corporation ("SitusAMC" or "Defendant") individually and on behalf of all others similarly situated, and allege, upon personal knowledge as to their own actions and their counsel's investigation, and upon information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

1. This class action arises out of the recent data breach ("Data Breach") involving Defendant, a New York-based real estate finance services firm.

2. Plaintiffs bring this Complaint against Defendant for its failure to properly secure and safeguard the personally identifiable information that it collected and maintained as part of its regular business practices, including, *inter alia*, Plaintiffs' and Class Members' names, addresses, dates of birth, Social Security numbers, driver's license numbers and other government-issued

1

identifiers, and financial account information (such as bank account numbers or credit or debit card numbers) (collectively defined herein as "PII" or "Private Information").[1]

3.      On or about November 12, 2025, Defendant learned that it had been the subject of a cyberattack.

4.      On November 22, 2025, Defendant issued a "Statement" on its website, stating that on November 12, 2025, it became aware of an incident that it determined resulted in certain information on its systems being compromised.[2] Specifically, "corporate data associated with certain of our clients' relationship with SitusAMC such as accounting records and legal agreements has been impacted. Certain data relating to some of our clients' customers may also have been impacted."[3]

5.      Over a month later, on December 29, 2025, Defendant updated its "Statement." The update stated that "[t]he incident is contained, the threat actor was eradicated from the SitusAMC environment, and the forensic investigation is now closed."[4]

6.      SitusAMC provides specialized technology, data, and advisory services supporting origination, transaction, management, servicing, and valuation across the commercial and residential real estate finance industry. SitusAMC "partner[s] with leading lenders and investors to help them originate, transact, manage, and value their real estate portfolios."[5] Defendant's

---

[1] Personally identifiable information generally incorporates information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information. 2 C.F.R. § 200.79. At a minimum, it includes all information that on its face expressly identifies an individual.

[2] https://www.situsamc.com/databreach (last visited March 16, 2026).

[3] *Id.*

[4] *Id.*

[5] https://www.linkedin.com/company/situsamc/about/ (last visited March 16, 2026).

clients impacted by the breach include several major US banks, such as JPMorgan Chase and Citigroup.[6]

7.    "SitusAMC manages billions of loan documents annually for banks and mortgage lenders, meaning a single compromise can spread risk across the broader financial sector," warned Steve Cobb, Chief Information Security Officer at SecurityScorecard.[7]

8.    Plaintiffs and the Class are current and former customers of Defendant's clients. Despite discovering the Breach on November 12, 2025, Defendant delayed alerting victims of the Data Breach until February 25, 2026.

9.    Defendant obtained, collected and maintained Plaintiffs' and Class Members' Private Information on Defendant's computer network systems as part of its services to its clients.

10.    Defendant's computer network system lacked the adequate and reasonable cyber-security procedures and protocols necessary to effectively defend its data, leaving Plaintiffs' and Class Members' Private Information unprotected.

11.    Defendant left its computer network system vulnerable to unauthorized access by cyber-criminals. Upon information and belief, cyber-criminals took advantage of the vulnerabilities in Defendant's computer network to gain access to the Private Information held on Defendant's computer network systems.

12.    Plaintiffs' and Class Members' Private Information was held on Defendant's computer network at the time the cyber-criminals were able to gain access to it.

---

[6]  https://www.cpomagazine.com/cyber-security/jpmorgan-chase-citi-morgan-stanley-and-other-major-us-banks-impacted-by-data-breach-at-situsamc/.

[7] *Id.*

13.     Defendant's financial-institution clients are required to entrust Defendant with sensitive, non-public Private Information, without which Defendant could not perform its regular business activities.

14.     By obtaining, collecting, using, and deriving a benefit from the Private Information of Plaintiffs and Class Members, Defendant assumed legal and equitable duties to those individuals to protect and safeguard that information from unauthorized access and intrusion.

15.     Defendant failed to adequately protect Plaintiffs' and Class Members' Private Information. This unencrypted, unredacted Private Information was compromised due to Defendant's negligent and/or careless acts and omissions and its utter failure to protect Plaintiffs' and Class Members' sensitive data. Hackers targeted and obtained Plaintiffs' and Class Members' Private Information because of its value in exploiting and stealing the identities of Plaintiffs and Class Members. The present and continuing risk of identity theft and fraud to victims of the Data Breach will remain for their respective lifetimes.

16.     In breaching its duties to properly safeguard Plaintiffs' and Class Members' Private Information and give them timely, adequate notice of the Data Breach's occurrence, Defendant's conduct amounts to negligence and/or recklessness and violates federal and state statutes.

17.     Upon information and belief, Plaintiffs' Private Information is available on the dark web as a result of the Data Breach.

18.     Plaintiffs bring this action on behalf of all persons whose Private Information was compromised as a result of Defendant's failure to: (i) adequately protect the Private Information of Plaintiffs and Class Members; (ii) warn Plaintiffs and Class Members of Defendant's inadequate information security practices; and (iii) effectively secure hardware containing protected Private

4

Information using reasonable and effective security procedures free of vulnerabilities and incidents. Defendant's conduct amounts at least to negligence and violates federal and state statutes.

19.     Defendant disregarded the rights of Plaintiffs and Class Members by intentionally, willfully, recklessly, or negligently failing to implement and maintain adequate and reasonable measures to ensure that the Private Information of Plaintiffs and Class Members was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required, and appropriate protocols, policies, and procedures regarding the encryption of data, even for internal use. As a result, the Private Information of Plaintiffs and Class Members was compromised through disclosure to an unknown and unauthorized third party. Plaintiffs and Class Members have a continuing interest in ensuring that their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

20.     Plaintiffs and Class Members have suffered injury as a result of Defendant's conduct. These injuries include: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) actual misuse of the compromised data, including an increase in targeted spam calls, texts, and/or emails; (vii) nominal damages; and (viii) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

21.     Plaintiffs seek to remedy these harms and prevent any future data compromise on behalf of themselves and all similarly situated persons whose Private Information was

compromised and stolen as a result of the Data Breach and who remain at risk due to Defendant's inadequate data security practices.

## PARTIES

*Plaintiffs*

22.	Plaintiff Joseph Constantino is a resident and citizen of New Jersey.

23.	Plaintiff Linda Rae Maccarone is a resident and citizen of California.

24.	Plaintiff Lawrence Girard Maccarone is a resident and citizen of California.

25.	Plaintiff Lorena Claxton is a resident and citizen of South Carolina.

26.	Plaintiff Robert Pak is a resident and citizen of Florida.

27.	Plaintiff David Reisender is a resident and citizen of New York.

***Defendant SitusAMC Holdings Corporation***

28.	Defendant SitusAMC Holdings Corporation is a New York Corporation with its principal place of business at Tower 49, 12 East 49th Street, New York, New York 10017.

## JURISDICTION AND VENUE

29.	This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from Defendant.

30.	This Court has general personal jurisdiction over Defendant because Defendant is a New York corporation whose principal place of business is in New York.

31.	This Court also has specific personal jurisdiction over Defendant because Defendant purposefully avails itself of the privilege of conducting activities within New York, Plaintiffs' claims arise out of or relate to Defendant's activities in New York, and the exercise of jurisdiction comports with traditional notions of fair play and substantial justice.

32.    Venue is proper under 28 U.S.C. § 1391(b)(1) because Defendant's principal place of business is in this District.

## FACTUAL ALLEGATIONS

### Defendant's Business

33.    Defendant SitusAMC is the leading independent provider of specialized technology, data, advisory, and outsourcing solutions supporting the entire lifecycle of commercial and residential real estate finance. Its services include mortgage origination, loan underwriting and servicing, asset management, and valuation of real estate debt and equity.[8]

34.    SitusAMC's clients include major US banks and financial institutions, such as JPMorgan Chase, Citigroup, and Morgan Stanley. In the ordinary course of its business, SitusAMC manages billions of loan-related documents annually, requiring it to store and process extensive personal information, including financial account details, legal agreements, and Social Security numbers.[9]

35.    Upon information and belief, SitusAMC entered into contracts to provide services to JPMorgan Chase, Citigroup, and/or additional financial-institution clients. These contracts required SitusAMC to receive, store, and process sensitive customer information belonging to consumers like Plaintiffs and the Class.

36.    Defendant acquires sensitive customer information from consumers like Plaintiffs and the Class in order to provide its services and offerings. For example, SitusAMC provides financial institutions with support in underwriting, originating, closing, and funding residential mortgage loans. As part of its provision of these services, SitusAMC acquires data regarding the borrowers to whom

---

[8] https://www.situsamc.com/about-us-who-we-are (last visited March 16, 2026).

[9] https://www.cpomagazine.com/cyber-security/jpmorgan-chase-citi-morgan-stanley-and-other-major-us-banks-impacted-by-data-breach-at-situsamc/ (last visited March 16, 2026).

the mortgages pertain. According to Jon Gerretsen, Managing Director, New Originations and Fulfillment Services at SitusAMC:

> We're handling thousands of mortgage files and production on a daily, weekly and monthly basis . . . A processor can typically handle 25 to 30 borrower files at one time, because they're clearing conditions, ordering appraisals, sending out disclosures . . . . If we do all those types of activities for them, it allows that individual to focus all their attention on the client. If that borrower is shopping around with other companies, it's all about response time and service level. So whether it's text, email, a phone call, their response time improves dramatically.[10]

37.    SitusAMC also acquires sensitive customer data in other areas of its business operations, including, but not limited to, its offering to lenders of due diligence and third-party review services and its title search business.

38.    Plaintiffs and the Class are current and former customers of financial-institution clients of SitusAMC. These financial institutions provided SitusAMC with consumer information in connection with SitusAMC's contracted services.

39.    In the ordinary course of business, financial institutions such as JPMorgan Chase and Citigroup require customers, including Plaintiffs, to provide sensitive personal and financial information, including names, dates of birth, Social Security numbers, financial-account information, loan information, and other personally identifiable information.

40.    In the course of performing its services for its financial-institution clients, Defendant collected, stored, and maintained this Private Information on its computer systems and networks located at its various business locations throughout the United States.

---

[10] SitusAMC, *How Mortgage Lenders Can Quickly and Profitably Expand Into New Products*, https://www.situsamc.com/resources-insights/articles/how-mortgage-lenders-can-quickly-and-profitably-expand-new-products (last visited March 16, 2026) (emphasis added).

8

41.    Based on SitusAMC's contractual relationships with its financial-institution clients and the known sensitivity of the consumer information those clients entrusted to it, Defendant agreed to and undertook legal and contractual duties to maintain the confidentiality, integrity, and security of the Private Information. These duties included ensuring that SitusAMC's computer systems and data-handling practices complied with applicable federal and state laws, regulations, industry standards, and the reasonable expectations of the financial-institution clients and their customers.

*The Data Breach*

42.    Defendant was targeted in a cybersecurity attack that involved unauthorized removal of information from its systems. In response, Defendant launched an investigation to determine the nature and scope of the Data Breach and issued a statement on its website on November 22, 2025.[11]

43.    On November 25, 2025, Defendant posted a sample client letter ("Letter") on its website that stated in part:

> Following up on our prior communications, on or about November 12, 2025, SitusAMC ("we" or the "Company") became aware of an incident that resulted in certain information from our systems being compromised. As described further below, we have now confirmed certain information related to you was acquired by an unauthorized third-party during the incident.
>
> ***What Information Was Involved:*** While our investigation remains ongoing, we want to provide you with an update regarding certain information related to you that we have determined was acquired by the unauthorized actor. Specifically, we have file paths associated with certain files that were acquired by the unauthorized actor. We conducted word searches against these file paths to identify file paths that include your name in the file path. The searched file paths are related to (i) files associated with our residential Collateral and Asset Management (CAM) system, and (ii) SitusAMC corporate files that generally include legal contracts and accounting documents. We note that this is not a review of the content of any impacted files, but rather

---

[11] https://www.situsamc.com/databreach (last visited March 16, 2026).

a listing of relevant file paths likely related to you. A list of these file paths is attached hereto for your review.[12]

44. On February 25, 2026, Defendant sent a Notice of Data Breach ("Notice Letter") to Plaintiffs and Class Members which states:

> We are notifying you of a recent incident that may have impacted your personal information. SitusAMC Holdings Corporation ("SitusAMC") and/or its subsidiaries and affiliates work with various financial institutions to provide certain mortgage-related services that may involve borrower information and, in some cases, non-borrower information in connection with mortgage transactions. This letter explains the circumstances as we understand them and the resources we are making available to you.
>
> **What Happened?**
> On or about November 12, 2025, SitusAMC became aware of unauthorized access to certain systems within its information technology network. Upon becoming aware of the incident, SitusAMC commenced an investigation with the assistance of third-party experts, notified certain law enforcement and government authorities, and began taking measures to assess and contain the incident.
>
> The investigation has determined that an unauthorized third party acquired data from certain SitusAMC systems between November 13-21, 2025. As part of the review of the impacted data, SitusAMC identified that some of your personal information may have been involved.
>
> **What Information May Have Been Involved?**
> Based on our investigation, the personal information involved may have included your name, address, date of birth, Social Security number, driver's license number or other government-issued identifier, and/or financial account information (such as bank account number or credit or debit card number). Not all data elements were involved for each individual.

45. Omitted from the November 22, 2025 Statement, the November 25, 2025 Letter and the Notice Letter, were the identity of the cybercriminals who perpetrated this Data Breach, the details of the root cause of the Data Breach, and the vulnerabilities exploited. Additionally, there is no

---

[12] *Id*.

information provided to Defendant's clients as to the impact on its clients' customers. To date, these critical facts have not been explained or clarified to Plaintiffs and Class Members, who retain a vested interest in ensuring that their Private Information remains protected.

46.     Defendant's "disclosure" amounts to no real disclosure at all, as it fails to inform, with any degree of specificity, Plaintiffs and Class Members of the Data Breach's critical facts. Without these details, Plaintiffs' and Class Members' ability to mitigate the harms resulting from the Data Breach is severely diminished.

47.     Despite Defendant's intentional opacity about the root cause of this incident, several facts may be gleaned from the statement, including: (a) that this Data Breach was the work of cybercriminals; and (b) an unauthorized party gained access to a database containing Private Information.

48.     Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive information it solicited, collected, and maintained for Plaintiffs and Class Members, such as encrypting the information or deleting it when it was no longer needed.

49.     Plaintiffs further believe that their Private Information, and that of Class Members, was subsequently sold on the dark web following the Data Breach, as that is the modus operandi of cybercriminals that commit cyber-attacks of this type.

### Data Breaches are Preventable

50.     Defendant could have prevented this Data Breach by, among other things, properly encrypting or otherwise protecting their equipment and computer files containing Private Information.

11

51.    As explained by the Federal Bureau of Investigation, "[p]revention is the most effective defense against ransomware and it is critical to take precautions for protection."[13]

52.    To prevent and detect cyber-attacks, Defendant could and should have implemented, as recommended by the United States Government, the following measures:

- Implement an awareness and training program. Because end users are targets, customers and individuals should be aware of the threat of ransomware and how it is delivered.

- Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.

- Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

- Configure firewalls to block access to known malicious IP addresses.

- Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.

- Set anti-virus and anti-malware programs to conduct regular scans automatically.

- Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

- Configure access controls—including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.

- Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

- Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

- Consider disabling Remote Desktop protocol (RDP) if it is not being used.

---

[13]    https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view (last visited March 16, 2026).

- Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

- Execute operating system environments or specific programs in a virtualized environment.

- Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.[14]

53.    To prevent and detect cyber-attacks or ransomware attacks, Defendant could and should have implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the following measures:

**Secure internet-facing assets**

- Apply latest security updates
- Use threat and vulnerability management
- Perform regular audit; remove privileged credentials;

**Thoroughly investigate and remediate alerts**

- Prioritize and treat commodity malware infections as potential full compromise;

**Include IT Pros in security discussions**

- Ensure collaboration among [security operations], [security admins], and [information technology] admins to configure servers and other endpoints securely;

**Build credential hygiene**

- Use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords;

**Apply principle of least-privilege**

- Monitor for adversarial activities
- Hunt for brute force attempts
- Monitor for cleanup of Event Logs
- Analyze logon events;

**Harden infrastructure**

- Use Windows Defender Firewall

---

[14] *Id*. at 3-4.

- Enable tamper protection
- Enable cloud-delivered protection
- Turn on attack surface reduction rules and [Antimalware Scan Interface] for Office [Visual Basic for Applications].[15]

54. Given that Defendant was storing the sensitive Private Information of Plaintiffs and Class Members, Defendant could and should have implemented all of the above measures to prevent and detect cyberattacks.

55. The occurrence of the Data Breach indicates that Defendant failed to adequately implement one or more of the above measures to prevent cyberattacks, resulting in the Data Breach and the exposure of the Private Information of, upon information and belief, thousands to tens of thousands of individuals, including that of Plaintiffs and Class Members.

### *Defendant Solicits, Collects, and Stores Private Information*

56. As a condition of receiving services, Plaintiffs and Class Members were required to share their Private Information, either directly or indirectly, with Defendant.

57. Defendant retains and stores this information and derives a substantial economic benefit from the Private Information that it collects. But for the collection of Plaintiffs' and Class Members' Private Information, Defendant would be unable to provide its services.

58. By obtaining, collecting, and storing the Private Information of Plaintiffs and Class Members, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting the Private Information from disclosure.

59. Plaintiffs and Class Members have taken reasonable steps to maintain the confidentiality of their Private Information and relied on Defendant to keep their Private Information

---

[15] *See* https://www.microsoft.com/en-us/security/blog/2020/03/05/human-operated-ransomware-attacks-a-preventable-disaster/ (last visited March 16, 2026).

confidential and maintained securely, to use this information for business purposes only, and to make only authorized disclosures of this information.

60.     Defendant could have prevented this Data Breach by properly securing and encrypting the files and file servers containing the Private Information of Plaintiffs and Class Members.

### *Defendant Knew or Should Have Known of the Risk Because Companies in Possession of Private Information are Particularly Susceptible to Cyberattacks*

61.     Data thieves regularly target companies like Defendant due to the highly sensitive information in their custody. Defendant knew and understood that unprotected Private Information is valuable and highly sought after by criminal parties who seek to illegally monetize that Private Information through unauthorized access.

62.     Defendant's data security obligations were particularly important given the substantial increase in cyber-attacks and/or data breaches targeting entities that collect and store Private Information and other sensitive information, like Defendant, preceding the date of the Data Breach.

63.     In 2023, an all-time high for data compromises occurred, with 3,205 compromises affecting 353,027,892 total victims.[16] The estimated number of organizations impacted by data compromises has increased by +2,600 percentage points since 2018, and the estimated number of victims has increased by +1400 percentage points. The 2023 compromises represent a 78 percentage point increase over the previous year and a 72 percentage point hike from the previous all-time high number of compromises (1,860) set in 2021. In 2024, data compromises remained frequent and

---

[16] *See 2023 Data Breach Annual Report*, IDENTITY THEFT RESOURCE CENTER (Jan. 2024); https://www.idtheftcenter.org/wp-content/uploads/2024/01/ITRC_2023-Annual-Data-Breach-Report.pdf . (last visited March 16, 2026).

prevalent—3,158 data breaches occurred, exposing approximately 1,350,835,988 sensitive records—a 211% increase year-over-year.[17]

64.    In light of recent high profile data breaches at other industry leading companies, including T-Mobile, USA (37 million records, February – March 2023), 23andMe, Inc. (20 million records, October 2023), Wilton Reassurance Company (1.4 million records, June 2023), NCB Management Services, Inc. (1 million records, February 2023), Defendant knew or should have known that the Private Information that it collected and maintained would be targeted by cybercriminals.

65.    Additionally, as companies became more dependent on computer systems to run their business[18], e.g., working remotely as a result of the Covid-19 pandemic, and the Internet of Things ("IoT"), the danger posed by cybercriminals is magnified, thereby highlighting the need for adequate administrative, physical, and technical safeguards.[19]

66.    As a custodian of Private Information, Defendant knew, or should have known, the importance of safeguarding the Private Information entrusted to it, and of the foreseeable consequences if its data security systems were breached, including the significant costs imposed on Plaintiffs and Class Members as a result of a breach.

67.    Despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect the Private Information of Plaintiffs and Class Members from being compromised.

---

[17]    *2024 Data Breach Annual Report*, IDENTITY THEFT RESOURCE CENTER, https://www.idtheftcenter.org/publication/2024-data-breach-report/ (last visited March 16, 2026).

[18]    https://www.federalreserve.govieconres/notes/feds-notes/implications-of-cyber-risk-for-financial-stability-20220512.html (last visited March 16, 2026).

[19]    https://www.picussecurity.com/key-threats-and-cyber-risks-facing-financial-services-and-banking-firms-in-2022 (last visited March 16, 2026).

68.    At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding the Private Information of Plaintiffs and Class Members and of the foreseeable consequences that would occur if Defendant's data security system was breached, including, specifically, the significant costs that would be imposed on Plaintiffs and Class Members as a result of a breach.

69.    Defendant was, or should have been, fully aware of the unique type and the significant volume of data on Defendant's server(s), amounting to several thousand individuals' detailed, Private Information, and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

70.    The injuries to Plaintiffs and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the Private Information of Plaintiffs and Class Members.

71.    The ramifications of Defendant's failure to adequately secure the Private Information of Plaintiffs and Class Members are long-lasting and severe. Once Private Information is stolen, fraudulent use of that information and damage to victims may continue for years.

72.    As a company in possession of Private Information, Defendant knew, or should have known, the importance of safeguarding the Private Information entrusted to it by Plaintiffs and Class Members and of the foreseeable consequences if its data security systems were breached. This includes the significant costs imposed on Plaintiffs and Class Members as a result of a breach. Nevertheless, Defendant failed to take adequate cybersecurity measures to prevent the Data Breach.

### *Value of Personally Identifying Information*

73.    The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." The FTC

describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employee benefit management company or taxpayer identification number."[20]

74.     The Private Information of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials.[21] For example, Personal Information can be sold at a price ranging from $40 to $200.[22] Criminals can also purchase access to entire company data breaches from $900 to $4,500.

75.     Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a data breach because, there, victims can cancel or close credit and debit card accounts. The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change—names, addresses, and Social Security numbers.

76.     This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[23]

---

[20] 17 C.F.R. § 248.201 (2013).

[21] *Id.*

[22] *Your personal data is for sale on the dark web. Here's how much it costs*, Digital Trends (Oct. 16, 2019), https://www.digitaltrends com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/.

[23] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian (Dec. 6, 2017), https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/.

77.    Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

78.    The fraudulent activity resulting from the Data Breach may not come to light for years. There may be a time lag between when harm occurs versus when it is discovered, and also between when Private Information is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm[24]

79.    Plaintiffs and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their Private Information.

### Defendant Fails to Comply with FTC Guidelines

80.    The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

81.    In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cyber-security guidelines for businesses. These guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.

---

[24] *Report to Congressional Requesters*, GAO, at 29 (June 2007), https://www.gao.gov/assets/gao-07-737.pdf.

82.    The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.

83.    The FTC further recommends that companies not maintain Private Information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

84.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect employee data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential employee data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

85.    These FTC enforcement actions include actions against companies like Defendant.

86.    Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect Private Information. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

87.    Defendant failed to properly implement basic data security practices.

88.    Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to Private Information or to comply with applicable industry standards constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

89.    Upon information and belief, Defendant was at all times fully aware of its obligations to protect the Private Information provided by its clients; Defendant was also aware of the significant repercussions that would result from its failure to do so. Accordingly, Defendant's conduct was particularly unreasonable given the nature and amount of Private Information it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiffs and the Class.

### Defendant Fails to Comply with Industry Standards

90.    As noted above, experts studying cyber security routinely identify companies in possession of Private Information as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

91.    Several best practices have been identified that, at a minimum, should be implemented by companies in possession of Private Information, like Defendant, including but not limited to: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data and limiting which employees can access sensitive data. Defendant failed to follow these industry best practices, including a failure to implement multi-factor authentication.

92.    Other best cybersecurity practices that are standard in the media industry include installing appropriate malware detection software; monitoring and limiting network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible

21

communication system; training staff regarding critical points. Defendant failed to follow these cybersecurity best practices, including failure to train staff.

93.    Upon information and belief, Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

94.    These foregoing frameworks are existing and applicable industry standards for safeguarding consumer data, and upon information and belief, Defendant failed to comply with at least one—or all—of these accepted standards, thereby opening the door to the threat actor and causing the Data Breach.

### *Common Injuries and Damages*

95.    As a result of Defendant's ineffective and inadequate data security practices, the Data Breach, and the foreseeable consequences of Private Information ending up in the possession of criminals, the risk of identity theft to the Plaintiffs and Class Members has materialized and is imminent, and Plaintiffs and Class Members have all sustained actual injuries and damages, including: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) nominal damages; and (vii) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in

22

Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

*The Data Breach Increases Victims' Risk of Identity Theft*

96.    The unencrypted Private Information of Plaintiffs and Class Members has already or will end up for sale on the dark web as that is the modus operandi of hackers.

97.    Unencrypted Private Information may also fall into the hands of companies that will use the detailed Private Information for targeted marketing without the approval of Plaintiffs and Class Members. Simply put, unauthorized individuals can easily access the Private Information of Plaintiffs and Class Members.

98.    The link between a data breach and the risk of identity theft is simple and well established. Criminals acquire and steal Private Information to monetize the information. Criminals monetize the data by selling the stolen information on the black market to other criminals who then utilize the information to commit a variety of identity theft related crimes discussed below.

99.    Plaintiffs' and Class Members' Private Information is of great value to hackers and cyber criminals, and the data stolen in the Data Breach has been used and will continue to be used in a variety of sordid ways for criminals to exploit Plaintiffs and Class Members and to profit off their misfortune.

100.    Due to the risk of one's Social Security number being exposed, state legislatures have passed laws in recognition of the risk. For example, North Carolina has passed a law stating that "[t]he social security number can be used as a tool to perpetuate fraud against a person and to acquire sensitive personal, financial, medical, and familial information, the release of which could cause great financial or personal harm to an individual While the social security number was intended to be used solely for

23

the administration of the federal Social Security System, over time this unique numeric identifier has been used extensively for identity verification purposes[.]"[25]

101.    Moreover, "SSNs have been central to the American identity infrastructure for years, being used as a key identifier[.] . . . U.S. banking processes have also had SSNs baked into their identification process for years. In fact, SSNs have been the gold standard for identifying and verifying the credit history of prospective customers."[26]

102.    "Despite the risk of fraud associated with the theft of Social Security numbers, just five of the nation's largest 25 banks have stopped using the numbers to verify a customer's identity after the initial account setup [.]"[27] Accordingly, since Social Security numbers are frequently used to verify an individual's identity after logging onto an account or attempting a  transaction, "[h]aving access to your Social Security number may be enough to help a thief steal money from your bank account."

103.    One such example of criminals piecing together bits and pieces of compromised Private Information for profit is the development of "Fullz" packages.[28]

---

[25] *See* N.C. Gen. Stat. § 132-1.10(1).

[26] *See* https://www.americanbanker.com/opinion/banks-need-to-stop-relying-on-social-security-numbers (last visited March 16, 2026).

[27] *See* https://archive.nytimes.com/bucks.blogs.nytimes.com/2013/03/20/just-5-banks-prohibit-use-of-social-security-numbers/ (last visited March 16, 2026).

[28] "Fullz" is fraudster speak for data that includes the information of the victim, including, but not limited to, the name, address, credit card information, social security number, date of birth, and more. As a rule of thumb, the more information you have on a victim, the more money that can be made off of those credentials. Fullz are usually pricier than standard credit card credentials, commanding up to $100 per record (or more) on the dark web. Fullz can be cashed out (turning credentials into money) in various ways, including performing bank transactions over the phone with the required authentication details in-hand. Even "dead Fullz," which are Fullz credentials associated with credit cards that are no longer valid, can still be used for numerous purposes, including tax refund scams, ordering credit cards on behalf of the victim, or opening a "mule account" (an account that will accept a fraudulent money transfer from a compromised account) without the victim's knowledge. See, e.g., Brian Krebs, Medical Records for Sale in Underground Stolen From Texas Life Insurance Firm, Krebs on Security (Sep. 18, 2014), https://kreb

104.    With "Fullz" packages, cyber-criminals can cross-reference two sources of Private Information to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals.

105.    The development of "Fullz" packages means here that the stolen Private Information from the Data Breach can easily be used to link and identify it to Plaintiffs' and Class Members' phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the Private Information that was exfiltrated in the Data Breach, criminals may still easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over.

106.    The existence and prevalence of "Fullz" packages means that the Private Information stolen from the data breach can easily be linked to the unregulated data (like contact information) of Plaintiffs and the other Class Members.

107.    Thus, even if certain information (such as contact information) was not stolen in the data breach, criminals can still easily create a comprehensive "Fullz" package.

108.    Then, this comprehensive dossier can be sold—and then resold in perpetuity—to crooked operators and other criminals (like illegal and scam telemarketers).

### *Loss of Time to Mitigate the Risk of Identity Theft and Fraud*

109.    As a result of the recognized risk of identity theft, when a Data Breach occurs, and an individual is notified by a company that their Private Information was compromised, as in this Data

---

sonsecuritv.eotn/2014/09/medical-records-for-sale-in-underground-stolen-from-texas-life-insurance-](https://krebsonsecuritv.com/2014/09/medical-records-for-sale-in-underground-stolen-from-texas-life-insurance-finn/ (last visited March 16, 2026).

Breach, the reasonable person is expected to take steps and spend time to address the dangerous situation, learn about the breach, and otherwise mitigate the risk of becoming a victim of identity theft or fraud. Failure to spend time taking steps to review accounts or credit reports could expose the individual to greater financial harm — yet the resource and asset of time has been lost.

110.    Thus, due to the actual and imminent risk of identity theft, Defendant, in its Notice Letter instructs Plaintiffs and Class Members to protect themselves by reviewing account statements and monitoring their credit reports, in addition to enrolling in the offered free credit monitoring program.

111.    Defendant's extensive suggestion of steps that Plaintiffs and Class Members must take in order to protect themselves from identity theft and/or fraud demonstrates the significant time that Plaintiffs and Class Members must undertake in response to the Data Breach. Plaintiffs' and Class Members' time is highly valuable and irreplaceable, and accordingly, Plaintiffs and Class Members suffered actual injury and damages in the form of lost time that they spent on mitigation activities in response to the Data Breach and at the direction of Defendant's Notice Letter.

112.    Plaintiffs and Class Members have spent, and will spend additional time in the future, on a variety of prudent actions, such as researching and verifying the legitimacy of the Data Breach, freezing their payment cards, contacting credit bureaus to place freezes on their accounts, and monitoring their financial accounts for any indication of fraudulent activity, which may take years to detect. Accordingly, the Data Breach has caused Plaintiffs and Class Members to suffer actual injury in the form of lost time—which cannot be recaptured—spent on mitigation activities.

113.    Plaintiffs' mitigation efforts are consistent with the U.S. Government Accountability Office that released a report in 2007 regarding data breaches ("GAO Report") in which it noted that

26

victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[29]

114.    Plaintiffs' mitigation efforts are also consistent with the steps that FTC recommends that data breach victims take several steps to protect their personal and financial information after a data breach, including: contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for seven years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.

***Diminution of Value of Private Information***

115.    Private Information is a valuable property right.[30] Its value is axiomatic, considering the value of Big Data in corporate America and the consequences of cyber thefts include heavy prison sentences. Even this obvious risk to reward analysis illustrates beyond doubt that Private Information has considerable market value.

116.    Sensitive Private Information can sell for as much as $363 per record according to the Infosec Institute.[31]

117.    An active and robust legitimate marketplace for Private Information also exists. In 2019, the data brokering industry was worth roughly $200 billion. In fact, the data marketplace is so

---

[29] See United States Government Accountability Office, GAO-07-737, Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown (June 2007), https://www.gao.gov/new.items/d07737.pdf. (last visited March 16, 2026).

[30] *See Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, p. 2, GAO (June 2007), https://www.gao.gov/new.items/d07737.pdf.

[31] *See, e.g.*, John T. Soma, et al, *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets*, 15 Rich. J.L. & Tech. 11, at *3-4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted)..

sophisticated that consumers can actually sell their non-public information directly to a data broker who in turn aggregates the information and provides it to marketers or app developers. Consumers who agree to provide their web browsing history to the Nielsen Corporation can receive up to $60.00 a year.[32]

118.    As a result of the Data Breach, Plaintiffs' and Class Members' Private Information, which has an inherent market value in both legitimate and dark markets, has been damaged and diminished by its compromise and unauthorized release. However, this transfer of value occurred without any consideration paid to Plaintiffs or Class Members for their property, resulting in an economic loss. Moreover, the Private Information is now readily available, and the rarity of the Data has been lost, thereby causing additional loss of value.

119.    At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding the Private Information of Plaintiffs and Class Members, and of the foreseeable consequences that would occur if Defendant's data security system was breached, including, specifically, the significant costs that would be imposed on Plaintiffs and Class Members as a result of a breach.

120.    The fraudulent activity resulting from the Data Breach may not come to light for years.

121.    Plaintiffs and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their Private Information.

122.    Defendant was, or should have been, fully aware of the unique type and the significant volume of data on Defendant's network, amounting to, upon information and belief, thousands to tens

---

[32] https://computermobilepanel.nielsen.com/ui/US/en/faqen.html (last visited March 16, 2026).

of thousands of individuals' detailed personal information and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

123.    The injuries to Plaintiffs and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the Private Information of Plaintiffs and Class Members.

### *Future Costs of Credit and Identity Theft Monitoring are Reasonable and Necessary*

124.    Given the type of targeted attack, the sophisticated criminal activity, and the type of Private Information involved in this case, there is a strong probability that entire batches of stolen information have been placed, or will be placed, on the black market/dark web for sale and purchase by criminals intending to utilize the Private Information for identity theft crimes —*e.g.*, opening bank accounts in the victims'' names to make purchases or to launder money; file false tax returns; take out loans or lines of credit; or file false unemployment claims.

125.    Such fraud may go undetected until debt collection calls commence months, or even years, later. An individual may not know that his or her Private Information was used to file for unemployment benefits until law enforcement notifies the individual's employee-benefit management company of the suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

126.    Consequently, Plaintiffs and Class Members are at an increased risk of fraud and identity theft for many years into the future.

127.    The retail cost of credit monitoring and identity theft monitoring can cost around $200 a year per Class Member. This is a reasonable and necessary cost to monitor to protect Class Members from the risk of identity theft that arose from Defendant's Data Breach.

### *Loss of Benefit of the Bargain*

29

128. Furthermore, Defendant's poor data security deprived Plaintiffs and Class Members of the benefit of their bargain.

129. Plaintiffs and Class Members understood and expected that Defendant maintained adequate data security to protect the Private Information they were required to provide.

130. In fact, Defendant did not provide the expected data security. Accordingly, Plaintiffs and Class Members received services of a lesser value than what they reasonably expected to receive under the bargains struck with Defendant.

*Plaintiffs' Experiences*

**Plaintiff Joseph Constantino**

131. Plaintiff Joseph Constantino (for the purposes of this section, "Plaintiff") is an adult individual who at all relevant times has been a citizen and resident of New Jersey.

132. Plaintiff is a customer of a financial institution that outsources information to Defendant and his information was stored with and handled by Defendant as a result of his dealings with his financial institution.

133. As a customer of his financial institution, he was required to provide his Private Information which was subsequently provided to Defendant, including, among other things, his full name, address, Social Security number, date of birth, and financial account information.

134. Plaintiff received a Notice letter on or about February 27, 2026, notifying him that his Private Information, including his name, address, date of birth, Social Security number, driver's license number or other government-issued identifier, and/or financial account information (such as bank account number or credit or debit card number) were disclosed in the Data Breach.[33]

---

[33] *See* Plaintiff Constantino's Notice Letter attached as **Exhibit A**.

135.    Plaintiff greatly values his privacy and is very careful about sharing his sensitive Private Information. Plaintiff diligently protects his Private Information and stores any documents containing Private Information in a safe and secure location. He has never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source.

136.    Plaintiff is concerned that his Private Information has now been exposed to bad actors. As a result, he has taken multiple steps to avoid identity theft, including increasingly reviewing his credit monitoring service, setting up notices and reports and carefully reviewing all his accounts. Moreover, the Notice Letter Plaintiff received stated, "We encourage you to review and monitor your accounts for suspicious activity. Federal regulatory agencies recommend that you remain vigilant for the next 12 to 24 months."[34]

137.    As a result of the Data Breach, Plaintiff made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to researching the Data Breach, and reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud. Plaintiff monitors his Private Information multiple times a week and has already spent many hours dealing with the Data Breach, valuable time Plaintiff otherwise would have spent on other activities.

138.    Plaintiff suffered actual injury from having his Private Information compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of Private Information, a form of property that Defendant obtained from Plaintiff; (b) violation of privacy rights; and (c) present, imminent and impending injury arising from the increased risk of identity theft and fraud.

---

[34] *Id.*

139. Plaintiff has suffered actual injury in that his TD Bank account received Zelle deposits from an unknown individual. Plaintiff had to spend time disputing these transactions.

140. Plaintiff has experienced a substantial increase in spam telephone calls, emails and texts which, upon information and belief, are a direct result of the Data Breach.

141. Furthermore, Plaintiff has been caused significant worry and feelings of anxiety and emotional distress regarding the disclosure of his Private Information in the Data Breach.

142. As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. As a result of the Data Breach, Plaintiff is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

143. Plaintiff greatly values his privacy, and would not have provided his Private Information, undertaken the services and paid the amounts that he did if he had known that his Private Information would be maintained using inadequate data security systems.

**Plaintiff Linda Rae Maccarone**

144. Plaintiff Linda Rae Maccarone (for the purposes of this section, "Plaintiff") is an adult individual who at all relevant times has been a citizen and resident of California.

145. Plaintiff is a customer of a financial institution that outsources information to Defendant and her information was stored with and handled by Defendant as a result of her dealings with her financial institution.

146. As a customer of her financial institution, she was required to provide her Private Information which was subsequently provided to Defendant, including among other things, her full name, address, Social Security number, date of birth, and financial account information.

147.    Plaintiff received a Notice letter on or about February 27, 2026, notifying her that her Private Information, including her name, address, date of birth, Social Security number, driver's license number or other government-issued identifier, and/or financial account information (such as bank account number or credit or debit card number) were disclosed in the Data Breach.[35]

148.    Plaintiff greatly values her privacy and is very careful about sharing her sensitive Private Information. Plaintiff diligently protects her Private Information and stores any documents containing Private Information in a safe and secure location. She has never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source.

149.    Plaintiff is concerned that her Private Information has now been exposed to bad actors. As a result, she has taken multiple steps to avoid identity theft, including increasingly reviewing her credit monitoring service, setting up notices and reports and carefully reviewing all her accounts. Moreover, the Notice Letter Plaintiff received stated, "We encourage you to review and monitor your accounts for suspicious activity. Federal regulatory agencies recommend that you remain vigilant for the next 12 to 24 months."[36]

150.    As a result of the Data Breach and the instructions in Defendant's Notice Letter, Plaintiff made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to researching the Data Breach, and reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud. Plaintiff monitors her Private Information multiple times a week and has already spent many hours dealing with the Data Breach, valuable time Plaintiff otherwise would have spent on other activities.

151.    Plaintiff suffered actual injury from having her Private Information compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of

---

[35] *See* Plaintiff Linda Maccarone's Notice Letter attached as **Exhibit B**.
[36] *Id.*

Private Information, a form of property that Defendant obtained from Plaintiff; (b) violation of privacy rights; and (c) present, imminent and impending injury arising from the increased risk of identity theft and fraud.

152. Plaintiff has experienced a substantial increase in spam telephone calls, emails and texts which, upon information and belief, are a direct result of the Data Breach.

153. Furthermore, Plaintiff has been caused significant worry and feelings of anxiety and emotional distress regarding the disclosure of her Private Information in the Data Breach.

154. As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. As a result of the Data Breach, Plaintiff is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

155. Plaintiff greatly values her privacy, and would not have provided her Private Information, undertaken the services and paid the amounts that she did if she had known that her Private Information would be maintained using inadequate data security systems.

**Plaintiff Lawrence Girard Maccarone**

156. Plaintiff Lawrence Girard Maccarone (for the purposes of this section, "Plaintiff") is an adult individual who at all relevant times has been a citizen and resident of California.

157. Plaintiff is a customer of a financial institution that outsources information to Defendant and his information was stored with and handled by Defendant as a result of his dealings with his financial institution.

158. As a customer of his financial institution, he was required to provide his Private Information which was subsequently provided to Defendant, including among other things, his full

34

name, address, Social Security number, date of birth, financial account information, and driver's license number.

159.    Plaintiff received a Notice letter on or about February 27, 2026, notifying him that his Private Information, including his name, address, date of birth, Social Security number, driver's license number or other government-issued identifier, and/or financial account information (such as bank account number or credit or debit card number) were disclosed in the Data Breach.[37]

160.    Plaintiff greatly values his privacy and is very careful about sharing his sensitive Private Information. Plaintiff diligently protects his Private Information and stores any documents containing Private Information in a safe and secure location. He has never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source.

161.    Plaintiff is concerned that his Private Information has now been exposed to bad actors. As a result, he has taken multiple steps to avoid identity theft, including increasingly reviewing his credit monitoring service, setting up notices and reports and carefully reviewing all his accounts. Moreover, the Notice Letter Plaintiff received stated, "We encourage you to review and monitor your accounts for suspicious activity. Federal regulatory agencies recommend that you remain vigilant for the next 12 to 24 months.[38]

162.    As a result of the Data Breach and instructions in the Notice Letter, Plaintiff made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to researching the Data Breach, and reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud. Plaintiff monitors his Private Information multiple times a week and has already spent many hours dealing with the Data Breach, valuable time Plaintiff otherwise would have spent on other activities.

---

[37] *See* Plaintiff Lawrence Maccarone's Notice Letter attached as **Exhibit C**.
[38] *Id*.

163.    Plaintiff suffered actual injury from having his Private Information compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of Private Information, a form of property that Defendant obtained from Plaintiff; (b) violation of privacy rights; and (c) present, imminent and impending injury arising from the increased risk of identity theft and fraud.

164.    Plaintiff has experienced a substantial increase in spam telephone calls, emails and texts which, upon information and belief, are a direct result of the Data Breach.

165.    Furthermore, Plaintiff has been caused significant worry and feelings of anxiety and emotional distress regarding the disclosure of his Private Information in the Data Breach.

166.    As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. As a result of the Data Breach, Plaintiff is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

167.    Plaintiff greatly values his privacy, and would not have provided his Private Information, undertaken the services and paid the amounts that he did if he had known that his Private Information would be maintained using inadequate data security systems.

**Plaintiff Lorena Claxton**

168.    Plaintiff Lorena Claxton (for the purposes of this section, "Plaintiff") is an adult individual who at all relevant times has been a citizen and resident of South Carolina.

169.    Plaintiff is a customer of Rocket Mortgage, a financial institution that outsources information to Defendant and his information was stored with and handled by Defendant as a result of her dealings with her financial institution.

170.    As a customer of her financial institution, she was required to provide her Private Information which was subsequently provided to Defendant, including among other things, her full name, address, Social Security number, date of birth, and financial account information.

171.    Plaintiff received a Notice letter on or about February 27, 2026, notifying her that her Private Information, including her name, address, date of birth, Social Security number, driver's license number or other government-issued identifier, and/or financial account information (such as bank account number or credit or debit card number) were disclosed in the Data Breach.[39]

172.    Plaintiff greatly values her privacy and is very careful about sharing her sensitive Private Information. Plaintiff diligently protects her Private Information and stores any documents containing Private Information in a safe and secure location. She has never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source.

173.    Plaintiff is concerned that her Private Information has now been exposed to bad actors. As a result, she has taken multiple steps to avoid identity theft, including increasingly reviewing her credit monitoring services, setting up notices and reports, and regularly and carefully reviewing all her accounts.

174.    As a result of the Data Breach, Plaintiff made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to researching the Data Breach, and reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud. Plaintiff monitors her accounts multiple times a week and has already spent many hours dealing with the Data Breach, valuable time Plaintiff otherwise would have spent on other activities.

175.    Plaintiff suffered actual injury from having her Private Information compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of

---

[39] See Plaintiff Claxton's Notice Letter attached as **Exhibit D**.

Private Information, a form of property that Defendant obtained from Plaintiff; (b) violation of privacy rights; and (c) present, imminent and impending injury arising from the increased risk of identity theft and fraud.

176.    Plaintiff has experienced a substantial increase in spam telephone calls, emails and texts which upon information and belief are a direct result of the Data Breach.

177.    Furthermore, the Data Breach has caused Plaintiff to suffer significant worry and feelings of anxiety and emotional distress regarding the disclosure of her Private Information in the Data Breach.

178.    As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. As a result of the Data Breach, Plaintiff is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

179.    Plaintiff greatly values her privacy, and would not have provided her Private Information, undertaken the services and paid the amounts that she did if she had known that her Private Information would be maintained using inadequate data security systems.

**Plaintiff Robert Pak**

180.    Plaintiff Robert Pak (for the purposes of this section" Plaintiff") is an adult individual who at all relevant times has been a citizen and resident of Florida.

181.    Plaintiff is a former employee of Defendant.

182.    As an employee of Defendant, he was required to provide his Private Information to Defendant, including among other things, his full name, address, Social Security number, date of birth, driver's license number or other government-issued identifier, and financial account information.

183.    Plaintiff received a Notice letter on or about March 3, 2026, notifying him that him Private Information, including his name, address, date of birth, Social Security number, driver's license number or other government-issued identifier, and/or financial account information (such as bank account number or credit or debit card number) were disclosed in the Data Breach.[40]

184.    Plaintiff greatly values his privacy and is very careful about sharing his sensitive Private Information. Plaintiff diligently protects his Private Information and stores any documents containing Private Information in a safe and secure location. He has never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source.

185.    Plaintiff is concerned that his Private Information has now been exposed to bad actors. As a result, he has taken multiple steps to avoid identity theft, including reviewing his credit monitoring services, setting up notices and reports, and regularly and carefully reviewing all his accounts.

186.    As a result of the Data Breach, Plaintiff made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to researching the Data Breach, and reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud. Plaintiff monitors his accounts multiple times a week and has already spent many hours dealing with the Data Breach, valuable time Plaintiff otherwise would have spent on other activities.

187.    Plaintiff suffered actual injury from having his Private Information compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of Private Information, a form of property that Defendant obtained from Plaintiff; (b) violation of privacy rights; and (c) present, imminent and impending injury arising from the increased risk of identity theft and fraud.

---

[40] See Plaintiff Pak's Notice Letter attached as **Exhibit E**.

188.    Plaintiff has experienced a substantial increase in spam telephone calls, emails and texts which, upon information and belief, are a direct result of the Data Breach.

189.    Furthermore, the Data Breach has caused Plaintiff to suffer significant worry and feelings of anxiety and emotional distress regarding the disclosure of his Private Information in the Data Breach.

190.    As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. As a result of the Data Breach, Plaintiff is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

191.    Plaintiff greatly values his privacy, and would not have provided his Private Information to Defendant if he had known that his Private Information would be maintained using inadequate data security systems.

**Plaintiff David Reisender**

192.    Plaintiff David Reisender (for the purposes of this section" Plaintiff") is an adult individual who at all relevant times has been a citizen and resident of New York.

193.    Plaintiff is a customer of Rocket Mortgage, a financial institution that outsources information to Defendant and his information was stored with and handled by Defendant as a result of his dealings with his financial institution.

194.    As a customer of his financial institution, he was required to provide his Private Information which was subsequently provided to Defendant, including among other things, his full name, address, Social Security number, driver's license number or other government-issued identifier, date of birth, and financial account information.

195.    Plaintiff received a Notice letter on or about February 27, 2026, notifying him that him Private Information, including his name, address, date of birth, Social Security number, driver's license

number or other government-issued identifier, and/or financial account information (such as bank account number or credit or debit card number) were disclosed in the Data Breach.[41]

196.    Plaintiff greatly values his privacy and is very careful about sharing his sensitive Private Information. Plaintiff diligently protects his Private Information and stores any documents containing Private Information in a safe and secure location. He has never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source.

197.    Plaintiff is concerned that his Private Information has now been exposed to bad actors. As a result, he has taken multiple steps to avoid identity theft, including increasingly reviewing his credit monitoring services, setting up notices and reports, and regularly and carefully reviewing all his accounts.

198.    As a result of the Data Breach, Plaintiff made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to researching the Data Breach, and reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud. Plaintiff monitors his accounts multiple times a week and has already spent many hours dealing with the Data Breach, valuable time Plaintiff otherwise would have spent on other activities.

199.    Plaintiff suffered actual injury from having his Private Information compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of Private Information, a form of property that Defendant obtained from Plaintiff; (b) violation of privacy rights; and (c) present, imminent and impending injury arising from the increased risk of identity theft and fraud.

200.    Plaintiff has experienced a substantial increase in spam telephone calls, emails and texts which upon information and belief are a direct result of the Data Breach.

---

[41] See Plaintiff Reisender's Notice Letter attached as **Exhibit F**.

201.    Furthermore, the Data Breach has caused Plaintiff to suffer significant worry and feelings of anxiety and emotional distress regarding the disclosure of his Private Information in the Data Breach.

202.    As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. As a result of the Data Breach, Plaintiff is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

203.    Plaintiff greatly values his privacy, and would not have provided his Private Information, undertaken the services and paid the amounts that he did if he had known that his Private Information would be maintained using inadequate data security systems.

## CLASS ACTION ALLEGATIONS

204.    Plaintiffs bring this nationwide class action on behalf of themselves and on behalf of all others similarly situated pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

205.    The Class that Plaintiffs seek to represent is defined as follows:

**Nationwide Class:** All individuals residing in the United States whose Private Information was accessed and/or acquired by an unauthorized party as a result of the Data Breach (the "Class", and individuals constituting the Class to be referred to as the "Class Members").

206.    In addition, Plaintiffs Linda Maccarone and Lawrence Maccarone seek to represent a California subclass, defined as follows:

**California Subclass:** All individuals residing in California whose Private Information was accessed and/or acquired by an unauthorized party as a result of the Data Breach (the "California Class", and individuals constituting the California Class to be referred to as the "California Class Members")

207.    Excluded from the Classes are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

208.    Plaintiffs reserve the right to amend the definitions of the Classes or add a Class or Subclass if further information and discovery indicate that the definitions of the Class should be narrowed, expanded, or otherwise modified.

209.    The proposed Classes meet the criteria for certification under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

210.    Numerosity. The members of the Classes are so numerous that joinder of all members is impracticable, if not completely impossible. Although the precise number of individuals is currently unknown to Plaintiffs and in the possession of Defendant and/or Defendant's clients, upon information and belief, thousands of individuals were impacted.

211.    Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Classes that predominate over questions which may affect individual Class members, including the following:

      a.    Whether and to what extent Defendant had a duty to protect the Private Information of Plaintiffs and Class Members;

      b.    Whether Defendant had respective duties not to disclose the Private Information of Plaintiffs and Class Members to unauthorized third parties;

c. Whether Defendant had respective duties not to use the Private Information of Plaintiffs and Class Members for non-business purposes;

d. Whether Defendant failed to adequately safeguard the Private Information of Plaintiffs and Class Members;

e. Whether and when Defendant actually learned of the Data Breach;

f. Whether Defendant adequately, promptly, and accurately informed Plaintiffs and Class Members that their Private Information had been compromised;

g. Whether Defendant violated the law by failing to promptly notify Plaintiffs and Class Members that their Private Information had been compromised;

h. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

i. Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

j. Whether Plaintiffs and Class Members are entitled to actual damages and/or nominal damages as a result of Defendant's wrongful conduct; and,

k. Whether Plaintiffs and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

212. Typicality. Plaintiffs' claims are typical of those of the other members of the Classes because Plaintiffs, like every other Class Member, were exposed to virtually identical conduct and now suffer from the same violations of the law as each other member of the Class.

213. Policies Generally Applicable to the Classes. This class action is also appropriate for certification because Defendant acted or refused to act on grounds generally applicable to the Classes,

44

thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Classes as a whole. Defendant's policies challenged herein apply to and affect Class Members uniformly and Plaintiffs' challenge of these policies hinges on Defendant's conduct with respect to the Classes as a whole, not on facts or law applicable only to Plaintiffs.

214.    Adequacy. Plaintiffs will fairly and adequately represent and protect the interests of the Class Members in that they have no disabling conflicts of interest that would be antagonistic to those of the other Class Members. Plaintiffs seek no relief that is antagonistic or adverse to the Class Members and the infringement of the rights and the damages they have suffered is typical of other Class Members. Plaintiffs have retained counsel experienced in complex class action and data breach litigation, and Plaintiffs intend to prosecute this action vigorously.

215.    Superiority and Manageability. The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendant. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

216.    The nature of this action and the nature of laws available to Plaintiffs and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiffs and Class Members for the wrongs alleged because Defendant would

45

necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

217. The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrate that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

218. Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

219. Unless a Class-wide injunction is issued, Defendant may continue in its failure to properly secure the Private Information of Class Members, Defendant may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and Defendant may continue to act unlawfully as set forth in this Complaint.

220. Further, Defendant has acted on grounds that apply generally to the Classes as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class- wide basis.

221. Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the

disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a.     Whether Defendant failed to timely notify the Plaintiffs and the class of the Data Breach;

b.     Whether Defendant owed a legal duty to Plaintiffs and the Class to exercise due care in collecting, storing, and safeguarding their Private Information;

c.     Whether Defendant's security measures to protect their data systems were reasonable in light of best practices recommended by data security experts;

d.     Whether Defendant's failure to institute adequate protective security measures amounted to negligence;

e.     Whether Defendant failed to take commercially reasonable steps to safeguard its clients' Private Information; and,

f.     Whether adherence to FTC data security recommendations, and measures recommended by data security experts would have reasonably prevented the Data Breach.

**CAUSES OF ACTION**
**COUNT I**
**NEGLIGENCE**
**(On Behalf of Plaintiffs and the Class)**

222.    Plaintiffs incorporate and reallege all allegations above in paragraphs 1 through 221 as if fully set forth herein.

223.    Defendant solicited, gathered, and stored the Private Information of Plaintiffs and Class Members.

224.    Upon accepting and storing the Private Information of Plaintiffs and Class

Members on its computer systems and networks, Defendant undertook and owed a duty to Plaintiffs and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information of Plaintiffs and the Class from being compromised, lost, stolen, accessed, and misused by unauthorized persons.

225.    Defendant had full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiffs and Class Members could and would suffer if the Private Information was wrongfully disclosed. Plaintiffs and Class Members were the foreseeable victims of any inadequate safety and security practices. Plaintiffs and Class Members had no ability to protect their Private Information that was in Defendant's possession. As such, a special relationship existed between Defendant and Plaintiffs and the Class.

226.    Plaintiffs and Class Members were required to entrust their Private Information to Defendant, either directly or indirectly, including their names, Social Security numbers, and other Private Information.

227.    Implied in these exchanges was a promise by Defendant to ensure that the Private Information of Plaintiffs and Class Members in its possession was only used for the provided purpose and that Defendant would destroy any Private Information that it was not required to maintain.

228.    Defendant had full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiffs and Class Members could and would suffer if the Private Information were wrongfully disclosed.

229.    Defendant had a duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting

48

commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

230.    Defendant owed a duty of care to Plaintiffs and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected the Private Information.

231.    Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and Plaintiffs and Class Members.

232.    Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential Private Information.

233.    Defendant was subject to an "independent duty," untethered to any contract between Defendant and Plaintiffs or the Class.

234.    Defendant also had a duty to exercise appropriate clearinghouse practices to remove Private Information it was no longer required to retain pursuant to regulations.

235.    Moreover, Defendant had a duty to promptly and adequately notify Plaintiffs and the Class of the Data Breach.

236.    Defendant had and continues to have a duty to adequately disclose that the Private Information of Plaintiffs and the Class within Defendant's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiffs and the Class to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their Private Information by third parties.

237.    Defendant breached its duties, pursuant to the FTC Act and other applicable standards, and thus was negligent, by failing to use reasonable measures to protect Class Members' Private Information. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

a.    Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;

b.    Failing to adequately monitor the security of their networks and systems;

c.    Allowing unauthorized access to Class Members' Private Information;

d.    Failing to detect in a timely manner that Class Members' Private Information had been compromised;

e.    Failing to remove former Private Information it was no longer required to retain pursuant to regulations, and;

f.    Failing to timely and adequately notify Class Members about the Data Breach's occurrence and scope, so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

238.    Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect Private Information and not complying with applicable industry standards, as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of Private Information it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiffs and the Class.

239.    Defendant's violation of Section 5 of the FTC Act constitutes negligence.

240.    Plaintiffs and Class Members were within the class of persons the Federal Trade Commission Act was intended to protect and the type of harm that resulted from the Data Breach was the type of harm the statute was intended to guard against.

241.    The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and the Class.

242.    A breach of security, unauthorized access, and resulting injury to Plaintiffs and the Class was reasonably foreseeable, particularly in light of Defendant's inadequate security practices.

243.    It was foreseeable that Defendant's failure to use reasonable measures to protect Class Members' Private Information would result in injury to Class Members. Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches targeting companies in possession of Private Information.

244.    Defendant has full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiffs and the Class could and would suffer if the Private Information were wrongfully disclosed.

245.    Plaintiffs and the Class were the foreseeable and probable victims of any inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing the Private Information of Plaintiffs and the Class, the critical importance of providing adequate security of that Private Information, and the necessity for encrypting Private Information stored on Defendant's systems.

246.    It was therefore foreseeable that the failure to adequately safeguard Class Members' Private Information would result in one or more types of injuries to Class Members.

247. Plaintiffs and the Class had no ability to protect their Private Information that was in, and possibly remains in, Defendant's possession.

248. Defendant was in a position to protect against the harm suffered by Plaintiffs and the Class as a result of the Data Breach.

249. Defendant's duty extended to protecting Plaintiffs and the Class from the risk of foreseeable criminal conduct of third parties, which has been recognized in situations where the actor's own conduct or misconduct exposes another to the risk or defeats protections put in place to guard against the risk, or where the parties are in a special relationship. *See* Restatement (Second) of Torts § 302B. Numerous courts and legislatures have also recognized the existence of a specific duty to reasonably safeguard personal information.

250. Defendant has admitted that the Private Information of Plaintiffs and the Class was wrongfully lost and disclosed to unauthorized third persons as a result of the Data Breach.

251. But for Defendant's wrongful and negligent breach of duties owed to Plaintiffs and the Class, the Private Information of Plaintiffs and the Class would not have been compromised.

252. There is a close causal connection between Defendant's failure to implement security measures to protect the Private Information of Plaintiffs and the Class and the harm, or risk of imminent harm, suffered by Plaintiffs and the Class. The Private Information of Plaintiffs and the Class was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such Private Information by adopting, implementing, and maintaining appropriate security measures.

253. As a direct and proximate result of Defendant's negligence, Plaintiffs and the Class have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach;

52

(v) loss of benefit of the bargain; (vi) actual misuse of the compromised data, including an increase in targeted spam calls, texts, and/or emails; (vii) nominal damages; and (viii) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

254.    As a direct and proximate result of Defendant's negligence, Plaintiffs and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

255.    Additionally, as a direct and proximate result of Defendant's negligence, Plaintiffs and the Class have suffered and will suffer the continued risks of exposure of their Private Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information in its continued possession.

256.    Plaintiffs and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

257.    Defendant's negligent conduct is ongoing, in that it still holds the Private Information of Plaintiffs and Class Members in an unsafe and insecure manner.

258.    Plaintiffs and Class Members are also entitled to injunctive relief requiring Defendant to (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to all Class Members.

**COUNT II**
**NEGLIGENCE *PER SE***

**(On Behalf of Plaintiffs and the Class)**

259.    Plaintiffs incorporate and reallege all allegations above in paragraphs 1 through 221 as if fully set forth herein.

260.    Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by Defendant of failing to use reasonable measures to protect Private Information. Various FTC publications and orders also form the basis of Defendant's duty.

261.    Defendant violated Section 5 of the FTC Act (and similar state statutes) by failing to use reasonable measures to protect Private Information and not complying with industry standards. Defendant's conduct was particularly unreasonable given the nature and amount of Private Information obtained and stored and the foreseeable consequences of a data breach on Defendant's systems.

262.    Defendant's violation of Section 5 of the FTC Act (and similar state statutes) constitutes negligence *per se.*

263.    Plaintiffs and Class Members are consumers within the class of persons Section 5 of the FTC Act (and similar state statutes) is intended to protect.

264.    Moreover, the harm that has occurred is the type of harm the FTC Act (and similar state statutes) was intended to guard against. Indeed, the FTC has pursued over fifty enforcement actions against businesses which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm suffered by Plaintiff and Class Members.

265.    As a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members have suffered or will suffer injury, including but not limited to: (i) invasion of privacy;

54

(ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) actual misuse of the compromised data, including an increase in targeted spam calls, texts, and/or emails; (vii) nominal damages; and (viii) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

266.    Plaintiffs and Class Members have been injured and are entitled to damages in an amount to be proven at trial.

**COUNT III**
**BREACH OF THIRD-PARTY BENEFICIARY CONTRACT**
**(On Behalf of Plaintiffs and the Class)**

267.    Plaintiffs incorporate and reallege all allegations above in paragraphs 1 through 221 as if fully set forth herein.

268.    Upon information and belief, Defendant entered into standardized contracts with its financial-institution clients to provide specialized technology, data, advisory, and outsourcing solutions supporting the entire lifecycle of commercial and residential real estate finance. Upon information and belief, these contracts required Defendant to implement sufficient data security practices, procedures, and protocols to safeguard the Private Information entrusted to it by its financial institution clients, who themselves had legal obligations to ensure the security and protection of that information.

269.    Such contracts were made expressly for the benefit of Plaintiffs and the Class, as it was their Private Information that Defendant agreed to receive and protect through its services when financial institutions hired Defendant to assist them in meeting the demands of their customers, like Plaintiffs and the Class. Thus, benefiting Plaintiffs and the Class was a direct and primary objective of

the contracting parties, and Plaintiffs and Class Members were direct and express beneficiaries of such contracts.

270.    Defendant knew that if it were to breach these contracts with its clients, Plaintiffs and the Class would be harmed.

271.    Defendant breached its contracts with its clients and, as a result, Plaintiffs and Class Members were affected by this Data Breach when Defendant failed to use reasonable data security and/or business associate monitoring measures that could have prevented the Data Breach.

272.    As foreseen, Plaintiffs and the Class were harmed by Defendant's failure to use reasonable data security measures to securely store and protect the files in its care, including but not limited to, the continuous and substantial risk of harm through the loss of their Private Information.

273.    As a direct and proximate result of Defendant's breach of the third-party beneficiary contracts, Plaintiffs and Class Members are entitled to damages, including compensatory, punitive, and/or nominal damages, and/or disgorgement or restitution, in an amount to be proven at trial.

<u>**COUNT IV**</u>
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiffs and the Class)**

274.    Plaintiffs incorporate and reallege all allegations above in paragraphs 1 through 221 as if fully set forth herein.

275.    This claim is brought in the alternative to breach of third-party beneficiary contract.

276.    Defendant knowingly and deliberately enriched itself by saving the costs it reasonably should have expended on data security at the expense and to the detriment of Plaintiffs and Class Members.

277.    Upon information and belief, Defendant funds its data security measures entirely from its general revenue.

56

278. Plaintiffs and Class Members conferred a monetary benefit, directly or indirectly on Defendant, including in the form of their Private Information, which has monetary value and from which Defendant derives its business.

279. Defendant solicited, collected, stored, and maintained Plaintiffs' and Class Members' Private Information, and as such, Defendant accepted and had knowledge of the benefits conferred upon it by Plaintiffs and Class Members. Defendant profited from these transactions and used Plaintiffs' and Class Members' Private Information for business purposes.

280. When Plaintiffs and Class Members provided their Private Information to Defendant, directly or indirectly, they did so with the mutual understanding and reasonable expectation that Defendant would adequately secure and protect their Private Information from unauthorized access and disclosure.

281. Protecting Plaintiffs' and Class Members' Private Information is integral to Defendant's business. Without Plaintiffs' and Class Members' Private Information, Defendant would be unable to provide the services comprising its core business.

282. Instead of providing a reasonable level of data security that would have prevented the Data Breach, however, Defendant calculated to increase its own profits at the expense of Plaintiffs and Class Members by utilizing cheaper, ineffective security measures.

283. Defendant cut data security costs and failed to take known and available steps to secure and safeguard Plaintiffs' and Class Members' Private Information.

284. Defendant therefore enriched itself by saving the costs it reasonably should have spent on data security measures to secure Plaintiffs' and Class Members' Private Information.

285. Plaintiffs and Class Members, on the other hand, suffered as a direct and proximate result of Defendants' decisions to prioritize its own profits over the requisite data security.

286.    Under the principles of equity and good conscience, Defendant should not be permitted to retain the monetary benefit belonging to Plaintiffs and Class Members, because Defendant failed to implement appropriate data security measures.

287.    Plaintiffs and Class Members have no adequate remedy at law.

288.    It would be inequitable and unconscionable to permit Defendant to retain funds they saved by shirking data security and leaving Plaintiffs and Class Members to suffer the consequences.

289.    Defendant should, therefore, be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiffs and Class Members, all gains it unjustly received.

## COUNT V
### DECLARATORY JUDGMENT
**(On Behalf of Plaintiffs and the Class)**

290.    Plaintiffs incorporate and reallege all allegations above in paragraphs 1 through 221 as if fully set forth herein.

291.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq*., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as those alleged herein, which are tortious, and which violate the terms of the federal and state statutes described above.

292.    An actual controversy has arisen in the wake of the Data Breach at issue regarding Defendant's common law and other duties to act reasonably with respect to employing reasonable data security. Plaintiffs allege Defendant's actions in this respect were inadequate and unreasonable and, upon information and belief, remain inadequate and unreasonable. Additionally, Plaintiffs and the Class continue to suffer injury due to the continued and ongoing threat of new or additional fraud against them or on their accounts using the stolen data.

58

293.    Under its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

   a.    Defendant continues to owe a legal duty to employ reasonable data security to secure the Private Information it possesses, and to notify impacted individuals of the Data Breach under the common law and Section 5 of the FTC Act;

   b.    Defendant continues to breach its duty by failing to employ reasonable measures to secure personal and financial information; and

   c.    Defendant's breach of its legal duty continues to cause harm to Plaintiffs and the Class.

294.    The Court should also issue corresponding injunctive relief requiring Defendant to employ adequate security protocols consistent with industry standards to protect Plaintiffs' and the Class's data.

295.    If an injunction is not issued, Plaintiffs and the Class will suffer irreparable injury and lack an adequate legal remedy in the event of another breach of Defendant's data systems. If another breach of Defendant's data systems occurs, Plaintiffs and the Class will not have an adequate remedy at law because many of the resulting injuries are not readily quantified in full and they will be forced to bring multiple lawsuits to rectify the same conduct. Simply put, monetary damages, while warranted to compensate Plaintiffs and the Class for their out-of-pocket and other damages that are legally quantifiable and provable, do not cover the full extent of injuries suffered by Plaintiffs and the Class, which include monetary damages that are not legally quantifiable or provable.

296.    The hardship to Plaintiffs and the Class if an injunction is not issued exceeds the hardship to Defendant if an injunction is issued.

297.    Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach, thus eliminating the injuries that would result to Plaintiffs, the Class, and the public at large.

<u>**COUNT VI**</u>

**CALIFORNIA CONSUMER PRIVACY ACT**
**Cal. Civ. Code §§ 1798.100 *et seq.* ("CCPA")**
**(On Behalf of Plaintiffs Linda Maccarone and Lawrence Maccarone and the California Subclass)**

298.    Plaintiffs Linda Maccarone and Lawrence Maccarone (for purposes of this count "Plaintiffs") restate and incorporate by reference herein all the allegations contained in paragraphs 1 through 221.

299.    Defendant is a corporation organized or operated for the profit or financial benefit of its owners. Defendant collects consumers' Private Information (for the purposes of this section, "Private Information") as defined in the California Consumer Privacy Act ("CCPA"), Cal. Civ. Code § 1798.140.

300.    Defendant violated § 1798.150 of the CCPA by failing to prevent Plaintiffs' and California Subclass Members' nonencrypted Private Information from unauthorized access and exfiltration, theft, or disclosure as a result of Defendant's violations of its duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information.

301.    Defendant has a duty to implement and maintain reasonable security procedures and practices to protect Plaintiffs' and California Subclass Members' Private Information. As detailed herein, Defendant failed to do so.

302.    As a direct and proximate result of Defendant's acts, Plaintiffs' and California Subclass Members' Private Information, names, addresses, dates of birth, Social Security numbers, driver's license numbers or other government-issued identifiers, and/or financial account information

(such as bank account number or credit or debit card number), was subjected to unauthorized access and exfiltration, theft, or disclosure.

303. Plaintiffs and California Subclass Members seek injunctive or other equitable relief to ensure Defendant hereinafter properly safeguards customer Private Information by implementing reasonable security procedures and practices. Such relief is particularly important because Defendant continues to hold customer Private Information, including Plaintiffs' and California Subclass Members' Private Information. Plaintiffs and California Subclass Members have an interest in ensuring that their Private Information is reasonably protected.

304. A judicial determination of this issue is necessary and appropriate at this time under the circumstances to prevent further data breaches by Defendant and third parties with similar inadequate security measures.

305. Plaintiffs and California Subclass Members seek actual damages, as well as all monetary and non-monetary relief allowed by law, including actual financial losses; injunctive relief; and reasonable attorneys' fees and costs.

306. On March 2, 2026, counsel for Plaintiffs provided written notice[42] via email to Defendant's counsel who agreed to accept service on Defendant's behalf, of the intent to pursue claims under the CCPA and an opportunity for Defendant to cure. Plaintiffs' written notice set forth the violations of Defendant's duty to implement and maintain reasonable security procedures and practices alleged in this Amended Consolidated Class Action Complaint. If Defendant does not cure the effects of the Data Breach, which would require retrieving the Private Information or securing the Private Information from continuing and future use, within 30 days of delivery of such CCPA notice letter (which Plaintiffs believe is not possible under these facts and

---

[42] Plaintiff Linda Maccarone and Lawrence Maccarone's CCPA Letters are attached as **Exhibits G** and **H**.

circumstances), Plaintiffs shall seek actual damages and statutory damages of no less than $100 and up to $750 per record subject to the Data Breach on behalf of the class as authorized by the CCPA.

307. To date, Defendant has taken no action to remedy its misconduct or otherwise address the violations outlined in the written notice sent by Plaintiffs' counsel.

308. Plaintiffs and the California Subclass seek injunctive or other equitable relief to ensure that Defendant hereinafter adequately safeguards Private Information by implementing reasonable security procedures and practices. This relief is important because Defendant still holds Private Information related to Plaintiffs and the California Subclass. Plaintiff and the California Subclass have an interest in ensuring that their Private Information is reasonably protected.

## COUNT VII

**CALIFORNIA CONSUMER RECORDS ACT**
**Cal. Civ. Code §§ 1798.82 *et seq.* ("CCRA")**
**(On Behalf of Plaintiffs Linda Maccarone and Lawrence Maccarone and the California Subclass)**

309. Plaintiffs Linda Maccarone and Lawrence Maccarone (for purposes of this count "Plaintiffs") restate and incorporate by reference herein all the allegations contained in paragraphs 1 through 221.

310. Section 1798.82 of the California Civil Code requires any "person or business that conducts business in California, and that owns or licenses computerized data that includes personal information" to "disclose any breach of the security of the system following discovery or notification of the breach in the security of the data to any resident of California whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person[.]" Under section 1798.82, the disclosure "shall be made in the most expedient time possible and without unreasonable delay. . . ."

311.    The CCRA further provides: "Any person or business that maintains computerized data that includes personal information that the person or business does not own shall notify the owner or licensee of the information of any breach of the security of the data immediately following discovery, if the personal information was, or is reasonably believed to have been, acquired by an unauthorized person." Cal. Civ. Code § 1798.82(b).

312.    The CCRA specifies certain requirements when entities subject to its purview are required to issue a security breach notification, including that such entities do not unreasonably delay such notifications.

313.    Defendant unreasonably delayed—by more than three months—before sending notice of the breach to California Subclass Members.

314.    As a result of Defendant's violation of the CCRA, Plaintiffs and California Subclass Members were deprived of prompt notice of the Data Breach and were thus prevented from taking appropriate protective measures, such as securing identity theft protection or requesting a credit freeze. These measures could have prevented some of the damages suffered by Plaintiffs and California Subclass Members because their stolen information would have had less value to identity thieves.

315.    As a result of Defendant's violation of the CCRA, Plaintiffs and California Subclass Members suffered incrementally increased damages separate and distinct from those simply caused by the Data Breach itself.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all Class Members, request judgment against Defendant and that the Court grant the following:

A.    For an order certifying the Class, as defined herein, and appointing Plaintiffs and their

Counsel to represent the Class;

B.    For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of the Private Information of Plaintiffs and Class Members, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiffs and Class Members;

C.    For injunctive relief requested by Plaintiffs, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs and Class Members, including but not limited to an order:

i.    prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

ii.    requiring Defendant to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state, or local laws.

iii.    requiring Defendant to delete, destroy, and purge the personal identifying information of Plaintiffs and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiffs and Class Members;

iv.    requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the Private Information of Plaintiffs and Class Members;

v.    prohibiting Defendant from maintaining the Private Information of Plaintiffs and Class Members on a cloud-based database;

vi.    requiring Defendant to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

vii.    requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring;

viii.    requiring Defendant to audit, test, and train its security personnel regarding any new or modified procedures;

ix.    requiring Defendant to segment data by, among other things, creating firewalls and access controls so that if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

x.    requiring Defendant to conduct regular database scanning and securing checks;

xi.    requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personal identifying information, as well as protecting the personal identifying information of Plaintiffs and Class Members;

xii.    requiring Defendant to conduct internal training and education routinely and continually, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xiii.    requiring Defendant to implement a system of tests to assess its employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly

and periodically testing employees' compliance with Defendant's policies, programs, and systems for protecting personal identifying information;

xiv.    requiring Defendant to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendant's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xv.    requiring Defendant to meaningfully educate all Class Members about the threats that they face as a result of the loss of their confidential Private Information to third parties, as well as the steps affected individuals must take to protect themselves;

xvi.    requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and for a period of 10 years, appointing a qualified and independent third-party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendant's compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment;

D.    For an award of damages, including actual, nominal, and consequential damages, as allowed by law in an amount to be determined;

E.    For an award of attorneys' fees and costs as allowed by law;

F.    For prejudgment interest on all amounts awarded; and

G.    Such other and further relief as this Court may deem just and proper.

<strong><u>JURY TRIAL DEMANDED</u></strong>

Plaintiffs, on behalf of themselves and the putative Class, hereby demand a trial by jury on all claims so triable.

66

Dated: March 16, 2026     Respectfully submitted,

       By:  /s/ Mariya Weekes
           Mariya Weekes (*Pro Hac Vice*)
           **MILBERG, PLLC**
           333 SE 2nd Avenue, Suite 2000
           Miami, FL, 33131
           Tel: (866) 252-0878
           mweekes@milberg.com

           Mark K. Svensson (NY Bar No: 5974290)
           **MILBERG, PLLC**
           405 East 50th Street, Suite 408
           New York, New York 10022
           Tel.: (202) 975-0468
           msvensson@milberg.com

           Gregory Haroutunian (N.Y. Bar No. 5187430)
           M. Anderson Berry (*pro hac vice* forthcoming)
           Brandon P. Jack (*pro hac vice* forthcoming)
           **EMERY | REDDY, PC**
           600 Stewart Street, Suite 1100
           Seattle, WA 98101
           916.823.6955 (Tel)
           206.441.9711 (Fax)
           gregory@emeryreddy.com
           anderson@emeryreddy.com
           brandon@emeryreddy.com

## CERTIFICATE OF SERVICE

I hereby certify on this 16th of March 2026, I electronically filed the foregoing with the

Clerk of this Court using the CM/ECF filing system which sent notification to all counsel of record.

           /s/ Mariya Weekes
           Mariya Weekes