**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re SitusAMC Holdings Corporation Data Breach Litigation* | Case No. 1:25-cv-9748 <br><br> **Hon. Lewis J. Liman** |

### PLAINTIFFS' UNOPPOSED MOTION FOR
### PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiffs, individually and on behalf of all others similarly situated, hereby file their Unopposed Motion for Preliminary Approval of Class Action Settlement pursuant to Fed. R. Civ. P. 23.

This Motion is supported by (1) the attached Memorandum of Law; (3) the Settlement Agreement attached thereto as *Exhibit A*; (4) the Joint Declaration of Mariya Weekes and Gregory Haroutunian attached thereto as *Exhibit B*; and (5) the pleadings and record in this Action.

Plaintiffs respectfully request the Court grant this Motion without a hearing and set the Final Approval Hearing for 130 days after entry of the Preliminary Approval Order or the soonest available date thereafter.

 Dated: June 22, 2026

Respectfully submitted,

*/s/ Gregory Haroutunian*
Gregory Haroutunian (NY Bar No. 5187430)
**EMERY | REDDY, PC**
333 University Avenue, Suite 200
Sacramento, CA 95825
916.823.6955 (Tel)
206.441.9711 (Fax)
gregory@emeryreddy.com

Mariya Weekes (*pro hac vice*)
**MILBERG PLLC**
201 Sevilla Avenue, 2nd Floor
Coral Gables, FL 33134
Tele: 954-647-1866
mweekes@milberg.com

*Interim Co-Lead Class Counsel*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re SitusAMC Holdings Corporation Data Breach Litigation* | Case No. 1:25-cv-9748 <br><br> **Hon. Lewis J. Liman** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW**

**TABLE OF CONTENTS**

I.    BACKGROUND AND PROCEDURAL HISTORY……………………………………..1

II.   SUMMARY OF SETTLEMENT……………………………………………………3

      A.    Settlement Class………………………………………………………...3

      B.    The Settlement Benefits…………………………………..…………….3

            1.    Cash Payment A – Documented Losses…………………………...3

            2.    Cash Payment B – Flat Cash……………………………………4

            3.    California Statutory Payment…………………………………...4

            4.    Credit Monitoring………………………………………………4

            5.    Remediation Measures…………………………………………4

      C.    Notice Program and Settlement Administrator…………………………5

      D.    Claims Process and Distribution of Settlement Class Member Benefits………….6

      E.    Residual Funds…………………………………………………………7

      F.    Releases………………………………………………………………...8

      G.    Service Awards, Attorneys' Fees, and Costs………………………………..8

III.  ARGUMENT………………………………………………………………..8

      A.    THE PROPOSED SETTLEMENT MEETS THE PRELIMINARY
            APPROVAL STANDARD……………………………………………8

            1.    Plaintiffs and Class Counsel Have Adequately Represented the
                  Settlement Class – Rule 23(a)(2)(A)……………………………10

            2.    The Settlement Was Negotiated at Arm's Length and Aided by a
                  Respected and Experienced Mediator – Rule 23(e)(2)(B)……………11

            3.    The Settlement Benefits Provided Are Adequate Relief Given the
                  Complexity of the Case and Risks of Continued Litigation – Rule
                  23(e)(2)(C) and *Grinnell* Factors 1, 4, 5, 6, 8, and 9…………………12

            4.    The Settlement Treats Settlement Class Members Equitably –
                  Rule 23(e)(2)(D)……………………………………………..17

5.   The Remaining Grinnell Factors (2, 3, and 7) Support Preliminary Approval…………………………………………………………..18

B.   THE SETTLEMENT CLASS SHOULD BE CERTIFIED……………………..20

    1.   The Requirements of Rule 23(a) Are Satisfied……………………………..20

        a)   Numerosity……………………………………………………….21

        b)   Commonality……………………………………………………..21

        c)   Typicality…………………………………………………………22

        d)   Adequacy of Representation…………………………………...…22

C.   The Rule 23(b)(2) and 23(b)(3) Requirements Are Satisfied……………………24

    1.   Predominance……………………………………………………………24

    2.   Superiority………………………………………………………………..25

D.   THE COURT SHOULD APPROVE THE PROPOSED NOTICE PROGRAM AND CLAIMS PROCESS…………………………………………..26

IV.   PROPOSED SCHEDULE OF EVENTS…………………………………………..28

V.   CONCLUSION…………………………………………………………………29

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997)................................................................................................... 24

*Castagna v. Madison Square Garden, L.P.*,
   No. 09-cv-10211 (LTS)(HP), 2011 WL 2208614 (S.D.N.Y. June 7, 2011) ........................... 20

*Charron v. Wiener*,
   731 F.3d 241 (2d Cir. 2013) ............................................................................................... 23

*City of Detroit v. Grinnell Corp*,
   495 F.2d 448 (2d Cir. 1974) .......................................................................................... 9, 18

*Cohen v. J.P. Morgan Chase & Co.*,
   262 F.R.D. 153 (E.D.N.Y. 2009)........................................................................................ 20

*Dougherty, et al. v. Bojangles Restaurants, Inc.*,
   No. 25-CV-00065, DE 34 (W.D.N.C. Sep. 30, 2025) ............................................................ 13

*Dupler v. Costco Wholesale Corp.*,
   705 F. Supp. 2d 231 (E.D.N.Y. 2010) .................................................................................. 13

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974)........................................................................................................... 27

*Fleisher v. Phx. Life Ins. Co.*,
   No. 11-cv-8405 and 14-cv-8714-CM, 2015 WL 10847814 (S.D.N.Y. Sep. 9, 2015).............. 19

*Flores v. Mamma Lombardi's of Holbrook, Inc.*,
   104 F.Supp.3d 290 (E.D.N.Y 2015) ................................................................................... 12

*Fogarazzo v. Lehman Bros., Inc.*,
   232 F.R.D. 176 (S.D.N.Y. 2005) ........................................................................................ 22

*Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000) .................................................................................................. 9

*Hernandez v. Merrill Lynch & Co.*,
   2013 U.S. Dist. LEXIS 42681 (S.D.N.Y. Mar. 21, 2013) ...................................................... 19

*In re Agent Orange Prod. Liab. Litig.*,
   597 F. Supp. 740 (E.D.N.Y. 1984) ..................................................................................... 15

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
689 F.3d 229 (2d Cir. 2012). ........................................................................................ 20

*In re Canon U.S. Data Breach Litig.*,
No. 20-CV-6239-AMD-SJB, 2023 WL 7936207 (E.D.N.Y. Nov. 15, 2023) ................... passim

*In re GSE Bonds Antitrust Litig.*,
414 F. Supp. 3d 686 (S.D.N.Y. 2019) ............................................................................ 12

*In re Heartland Payment Sys., Inc. Client Data Sec. Breach Litig.*,
851 F. Supp. 2d 1040 (S.D. Tex. 2012) .......................................................................... 22

*In re IMAX Sec. Litig.*,
283 F.R.D. 178 (S.D.N.Y. 2012) .................................................................................... 19

*re Namenda Direct Purchaser Antitrust Litig.*,
462 F. Supp. 3d 307 (S.D.N.Y. 2020) .............................................................................. 9

*re Nassau Cty Strip Search Cases*,
461 F.3d 219 (2d Cir. 2006) ........................................................................................... 25

*In re Nissan Radiator/Transmission Cooler Litig.*,
No. 10-cv-7493-VB, 2013 WL 4080946 (S.D.N.Y. May 30, 2013) ................................. 22

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
330 F.R.D. 11 (E.D.N.Y. 2019) ...................................................................................... 10

*In re Sinus Buster Prods. Consumer Litig.*,
No. 12–CV–2429 (ADS)(AKT), 2014 WL 5819921 (E.D.N.Y. Nov. 10, 2014) ................. 20

*In re Target Corp. Customer Data Sec. Breach Litig.*,
MDL No. 14-2522 (PAM/JJK), 2015 WL 7253765 (D. Minn. Nov. 17, 2015) .................. 13

*In re Yahoo! Inc. Client Data Sec. Breach Litig.*,
2020 WL 4212811 (N.D. Cal. July 22, 2020) .................................................................. 25

*Kelen v. World Fin. Network Nat. Bank*,
295 F.R.D. 87 (S.D.N.Y. 2013) ...................................................................................... 21

*Krant v. UnitedLex Corp.*,
No. 23-2443-DDC-TJJ, 2024 U.S. Dist. LEXIS 230685 (D. Kan. Dec. 19, 2024) ............ 17

*Kurtz v. Kimberly-Clark Corp.*,
142 F.45th 112 (2d Cir. 2025) ........................................................................................ 16

*Logan v. Marker Group, Inc.*,
No. 4:22-CV-00174, 2024 WL 3489208 (S.D. Tex. July 18, 2024) ......................................... 13

*Maldini v. Marriott Int'l, Inc.*,
140 F.4th 123 (4th Cir. 2025) ................................................................................................. 14

*Maley v. Del Glob. Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002) ..................................................................................... 18

*Manley v. Midan Rest. Inc.,*
No. 14-cv-1693-HBP, 2016 WL 1274577 (S.D.N.Y. Mar. 30, 2016) ..................................... 10

*Marisol A. by Forbes v. Giuliani*,
126 F.3d 372, 378 (2d Cir. 1997). .................................................................................... 11, 23

McLaughlin v. IDT Energy,
No. 14-cv-417 (ENV) (RML), 2018 WL 3642627 (E.D.N.Y. July 30, 2018) ......................... 18

*Meredith Corp. v. SESAC, LLC,*
87 F. Supp. 3d 650 (S.D.N.Y. 2015) ................................................................................ 13, 26

*Monzon v. 103W77 Partners, LLC*,
13-cv-5951-AT, 2014 WL 6480557 (S.D.N.Y. Oct. 15, 2014) ................................................ 10

*Moses v. N.Y. Times, Co.*,
79 F.4th 235 (2d Cir. 2023) ...................................................................................................... 9

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
339 U.S. 306 (1950) ................................................................................................................ 27

*Newman v. Stein*,
464 F.2d 689 (2d Cir. 1972) .................................................................................................... 12

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
237 F.R.D. 26 (E.D.N.Y. 2006) ............................................................................................... 19

*Roach v. T.L. Cannon Corp.*,
778 F.3d 401 (2d Cir. 2015). ................................................................................................... 25

*Robidoux v. Celani*,
987 F.2d 931 (2d Cir. 1993). ................................................................................................... 22

*Rosenfeld v. Lenich*,
No. 18-CV-6720 (NGG) (PK), 2021 WL 508339 (E.D.N.Y. Feb. 4, 2021) ............................ 16

*Schutter v. Tarena Int'l, Inc.*,
   No. 21-CV-3502 (PKC) (RML), 2024 WL 4118465 (E.D.N.Y. Sept. 9, 2024) ...................... 19

*Shapiro v. JPMorgan Chase & Co.*,
   No. 11-cv-8331-MHD, 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ................................... 15

*Soberal-Perez v. Heckler*,
   717 F.2d 36 (2d Cir. 1983). ....................................................................................... 27

*Tart v. Lions Gate Entm't Corp.*,
   No. 14-cv-8004-AJN, 2015 WL 5945846 (S.D.N.Y. Oct. 13, 2015) .................................... 25

*Theus v. Brinker Int'l, Inc.*,
   No. 3:18-cv-686-TJC-MCR, 2025 WL 1786346 (M.D. Fla. June 27, 2025) .......................... 14

*Viafara v. MCIZ Corp.*,
   No. 12-cv-7452-RLE, 2014 WL 1777438 (S.D.N.Y. Apr. 30, 2014) .................................... 20

*Wal-Mart Stores, Inc. v . Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) .......................................................................................... 8

*Zeltser v. Merrill Lynch & Co.*,
   2014 WL 4816134 (S.D.N.Y. Sept. 23, 2014)................................................................ 26

## **Rules**

Fed. R. Civ. P. 23(a)(1)................................................................................................ 21

Fed. R. Civ. P. 23(a)(2)................................................................................................ 21

Fed. R. Civ. P. 23(a)(3)................................................................................................ 22

Fed. R. Civ. P. 23(a)(4)................................................................................................ 22

Fed. R. Civ. P. 23(a). .................................................................................................. 21

Fed. R. Civ. P. 23(b)(3)....................................................................................... 24, 25, 26

Fed. R. Civ. P. 23(c)(2)(B) ........................................................................................... 28

Fed. R. Civ. P. 23(e)(2)................................................................................................. 9

Fed. R. Civ. P. 23(g)(1)(A)……………………………………………………………………..23, 24

Fed. R. Civ. P. 23(h)(1)............................................................................................ 27, 28

## **Statutes**

4 Alba Conte & Herbert Newberg, NEWBERG ON CLASS ACTIONS § 13:50 (4th ed. 2002).......... 12

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.312 (2004) ............................................. 27

Plaintiffs[1] respectfully submit this Memorandum of Law in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement. The motion is supported by the Joint Declaration of Class Counsel ("Joint Decl.") attached as **Exhibit B**.[2]

## I.   BACKGROUND AND PROCEDURAL HISTORY

Defendant, SitusAMC Holdings Corporation ("SitusAMC" or "Defendant") provides, among other things, technology, data, and advisory services to the real estate finance industry. On or about November 12, 2025, Defendant discovered it had been the victim of the Data Incident, which involved the unauthorized access and exfiltration of certain information, including Personal Information, from Defendant's systems.

On November 24, 2025, the first putative nationwide class action was filed seeking redress for those impacted in the Data Incident. Thereafter, 6 similar complaints with overlapping putative classes were filed. *See* SA ¶3. On December 19, 2025, the Court consolidated the actions and appointed Mariya Weekes of Milberg, PLLC and Gregory Haroutunian of Emery Reddy, PC as Interim Co-Lead Class Counsel for Plaintiffs, and Courtney Maccarone of Kopelowitz Ostrow, P.A., Jessica Wilkes of Federman Sherwood, Andrew Fuller of Cotchett Pitre & McCarthy, LLP, Leanna A. Loginov of Shamis & Gentile, and Leigh S. Montgomery of Ellzey Kherkher Sanford Montgomery, LLP as members of an Executive Committee for Plaintiffs. ECF No. 15.

On January 19, 2026, Plaintiffs filed a Consolidated Complaint. ECF No. 26. On March 16, 2026, Plaintiffs filed a Second Amended Consolidated Complaint ("Complaint") asserting

---

[1] Capitalized terms herein shall have the same meanings as those defined in Section II of the Settlement Agreement ("SA"), attached to the Motion for Preliminary Approval as **Exhibit A**.

[2] Defendant does not oppose the relief sought by this Motion for Preliminary Approval (the "Motion") and agrees the Court should grant the Motion. By not opposing the relief, Defendant does not concede the factual basis for any claim or deny liability. The language in this Motion, including the description of proceedings, as well as legal and factual arguments, is Plaintiffs', and Defendant may disagree with certain of those characterizations and descriptions.

claims for negligence, negligence *per se*, breach of third-party beneficiary contract, unjust enrichment, declaratory judgment and violation of the California Consumer Privacy Act ("CCPA") and California Consumer Records Act ("CCRA"). ECF No. 47. In an effort to conserve the Parties' resources, the Parties thereafter engaged in settlement discussions.  Plaintiffs' counsel consulted with liability and damage experts, and the Parties exchanged informal discovery, including information that allowed Plaintiffs' counsel to assess the nature and scope of the Data Incident. The Parties agreed to mediation and exchange mediation statements. SA ¶6.

On April 16, 2026, the Parties participated in a full-day in-person mediation in New York with experienced mediator Marc E. Isserles, Esq. of JAMS. Joint Decl. ¶¶12-13; SA ¶ 7. Following a full day of arms-length negotiations, the Parties reached an agreement in principle on the material terms of a classwide settlement. Joint Decl. ¶13; SA ¶8.

This Settlement provides meaningful relief for the Settlement Class and resolves all claims in the Action. Plaintiffs now respectfully request that this Court: (1) preliminarily approve the Settlement as being within the range of fair, adequate, and reasonable; (2) provisionally certify the Settlement Class for settlement purposes only; (3) approve the Notice Program and the form and content of the Notices; (4) approve the Claim Form and Claims Process; (5) approve the opt-out and objection procedures; (6) appoint Plaintiffs as Class Representatives and Mariya Weekes of Milberg, PLLC and Gregory Haroutunian of Emery Reddy, PC as Class Counsel for the Settlement Class; (7) appoint Simpluris, Inc. as the Settlement Administrator; (8) stay the Action pending Final Approval of the Settlement; (9) enjoin and bar all members of the Settlement Class from initiating or continuing in any litigation or asserting any claims against Defendant and the Released Parties arising out of, relating to, or in connection with the Released Claims pending Final Approval; and (10) schedule a Final Approval Hearing for a time and date mutually

convenient for the Court, the Parties, Class Counsel, and Defendant's Counsel but not earlier than 130 days after Preliminary Approval, or as soon thereafter as the matter may be heard.

## II.    <u>SUMMARY OF SETTLEMENT</u>

The following is a summary of the material Settlement terms:

### A.    **Settlement Class**

The Settlement Class is defined as follows:

All persons in the United States who were sent notice of the Data Incident as identified in the Class List.

Excluded from the Settlement Class are: (a) Defendant's executive leadership team; (b) the Judge assigned to the Action, that Judge's immediate family, and Court staff, and (c) any Settlement Class Member who timely and validly opts out of the Settlement. SA ¶62.

### B.    **The Settlement Benefits**

The Settlement provides for both monetary and non-monetary, equitable relief. Defendant has agreed to fund a non-reversionary, cash $5,300,000.00 Settlement Fund that will be used to pay: (a) all costs associated with Credit Monitoring; (b) all claims for Cash Payments; (c) all Settlement Administration Costs; and (d) any Court-awarded attorneys' fees, costs, and (e) any Court-awarded Service Awards to Class Representatives. *Id.* ¶72. If the amount of Valid Claims exhausts the Settlement Fund, the amount of the Cash Payments will be reduced *pro rata* accordingly in the manner detailed in the Agreement. *Id.* ¶80. Defendant has also implemented security enhancements at its own cost. *Id.* ¶81.

#### 1.    **Cash Payment A – Documented Losses**

Claims for Cash Payment A – Documented Losses for up to $5,000 per Settlement Cass Member require a Settlement Class Member to elect Cash Payment A – Documented Losses on the Claim Form and attest under penalty of perjury to incurring documented losses fairly traceable

to the Data Incident. *Id.* ¶79(a). Settlement Class Members will be required to submit reasonable documentation supporting the losses. *Id.* If a Settlement Class Member does not submit reasonable documentation, or if their Claim is rejected by the Settlement Administrator for any reason, and the Settlement Class Member fails to cure, the Claim will be converted to Cash Payment B – Flat Cash. *Id.*

### 2. Cash Payment B – Flat Cash

In addition to or in lieu of electing Cash Payment A – Documented Losses, a Settlement Class Member may elect Cash Payment B – Flat Cash on the Claim Form, which is a *pro rata* amount of the Net Settlement Fund. *Id.* ¶79(b). The current estimated amount is approximately $75.00, which could be lower or higher based on the number of Valid Claims. *Id.*

### 3. California Statutory Payment

In addition to the above, all California Settlement Subclass Members may elect to receive a California Statutory Payment for an additional Cash Payment of $50.00, subject to downward *pro-ration* based on the number of Valid Claims. *Id.* ¶79(c).

### 4. Credit Monitoring

In addition to the Cash Payment options, Settlement Class Members will automatically receive an enrollment code for one year of CyEx Financial Shield Complete with one-bureau credit monitoring.  *Id.* ¶79(d). The Credit Monitoring will provide, among other benefits, credit monitoring, dark web monitoring, real-time authentication alerts, high-risk transaction monitoring, lost wallet protection, and insurance coverage for up to $1,000,000.00 for identity theft. The Credit Monitoring has an estimated value of $179.00 per year per Settlement Class Member. *Id.*

### 5. Remediation Measures

In addition to monetary relief, Defendant undertook significant remediation measures

following the Data Incident, including enhancements to, among other things, identity and access management, endpoint security and application control, network segmentation, server hardening, and configuration management. *Id.* ¶81. The costs of such implemented or to-be-implemented measures are the responsibility of the Defendant and will not in any way reduce the Settlement amount. *Id.*

### C.    Notice Program and Settlement Administrator

The Parties have agreed on a comprehensive Notice Program, which includes Postcard Notice, Long Form Notice, Settlement Website, and Settlement telephone line for frequently asked questions. *Id.* §VIII and Exs. 1 – 2. Defendant will make available to the Settlement Administrator the Class List no later than 10 days after entry of the Preliminary Approval Order. *Id.* ¶50.

The proposed Settlement Administrator, Simpluris, Inc. ("Simpluris") is a well-respected and reputable third-party administrator with significant experience with data breach settlements. Joint Decl. ¶35. It shall fulfill the requirements of the Preliminary Approval Order and Agreement, including the Notice Program, Claims Process, Escrow Account for the Settlement Fund, and Settlement Class Member Benefits. SA §VII.

Following entry of the Preliminary Approval Order, the Settlement Administrator shall commence the Notice Program, using the Court-approved Notice forms. *Id.* ¶89. Postcard Notice will be sent to members of the Settlement for whom postal addresses were included on the Class List or identified thereafter by the Settlement Administrator. *Id.* The Settlement Administrator shall perform reasonable address traces for Postcard Notices returned undeliverable. *Id.*  By way of example, a reasonable tracing procedure would be to run addresses of returned postcards through the Lexis/Nexis database that can be utilized for such purpose. *Id.*

The Postcard Notice (Exhibit 5 to the Agreement) will include, *inter alia*: a description of

the material terms of the Settlement; how to submit a Claim Form; Claim Form Deadline; Opt-Out Deadline for Settlement Class Members to opt-out of the Settlement; Objection Deadline for Settlement Class Members to object to the Settlement and/or Application for Attorneys' Fees, Costs, and Service Awards; Final Approval Hearing date; and the Settlement Website address at which Settlement Class Members may access this Agreement and other related documents and information. *Id.* ¶90. The Long Form Notice will include the opt-out and objection procedures, and the Postcard Notice shall direct the Settlement Class to the Long Form Notice for instructions. *Id.* ¶¶92–93.

The Settlement Website will be established as a means for Settlement Class Members to submit Claim Forms and obtain notice and information about the Settlement, including access to the Complaint, the Agreement, the Preliminary Approval Order, Long Form Notice, Claim Form, Motion for Final Approval, Application for Attorneys' Fees, Costs, and Service Awards, and Final Approval Order and Judgment, as well as other documents as the Parties agree to post or the Court orders posted. The Settlement Website shall remain online and operable for at least six months after Final Approval. *Id.* ¶66. The Settlement Administrator will establish and maintain an automated toll-free telephone line for Settlement Class to call with Settlement-related inquiries and answer the frequently asked questions of those who call with or otherwise communicate such inquiries. *Id.* ¶87(g).

### D.      Claims Process and Distribution of Settlement Class Member Benefits

The robust Claims Process is structured to ensure the Settlement Class has adequate time to review the terms of the Settlement Agreement, compile documents supporting their Claim for a Cash Payment, familiarize themselves with the Credit Monitoring benefits, and decide whether to opt-out of or object to the Settlement. Joint Decl. ¶39.

The Claim Form Deadline shall be set by the Preliminary Approval Order and shall be 130 days after the Court enters the Preliminary Approval Order, and Claim Form must be submitted to the Settlement Administrator online or through U.S. Mail. SA ¶¶22, 24, 70. The Settlement Administrator has authority to assess the validity of Claims; shall use reasonable efforts and means to identify and reject duplicate claims; use reasonable and customary steps to prevent fraud and abuse; and upon receipt of an incomplete Claim Form, may send a Notice of Deficiency using contact information provided in the Claim Form to attempt to cure the defect before rejecting the Claim. *Id.* ¶¶100–101. Settlement Class Member Benefits shall be distributed no later than 60 days after the Effective Date, or as soon as reasonably practicable thereafter. *Id.* ¶105. The Settlement Administrator will send Cash Payments by electronic payment or paper check and will ensure that Credit Monitoring access information has been properly distributed to Settlement Class Members. *Id.* ¶¶106, 87(p).

### E.    Residual Funds

Settlement Class Members will have ninety (90) days to cash the checks or electronically receive the payment, after which any uncashed checks will be void and the ability to receive the electronic payment will expire. *Id.* ¶112. If the aggregate value of void checks and lapsed electronic payments makes it economically feasible, such funds (after decreasing the total by the cost of any anticipated tax reporting requirements and other Settlement Administration Costs) will be disbursed *pro rata* via a second round of payments issued to those Settlement Class Members who successfully received electronic payments or cashed checks issued during the first round of disbursement. *Id.* If a second round of payments is not economically feasible, then any residual funds shall be distributed to an appropriate *cy pres* recipient mutually agreed upon by the Parties and approved by the Court. *Id.* If a second round of payments is economically feasible, then ninety

(90) days after the second disbursement, any uncashed checks will be void and the ability to receive electronic payment will also expire.  Any residual funds shall be distributed to an appropriate *cy pres* recipient mutually agreed upon by the Parties and approved by the Court. *Id.*

### F.      Releases

Plaintiffs and Settlement Class Members who do not timely and validly opt out of the Settlement will be bound by the Settlement, including the Releases that discharge the Released Claims against the Released Parties. *Id.* §XIII.

### G.      Service Awards, Attorneys' Fees, and Costs

Plaintiffs will apply to the Court for a Service Award of up to $2,500.00 for each Class Representative. *Id.* ¶109. Class Counsel shall apply to the Court for an award of attorneys' fees of up to one-third of the Settlement Fund ($1,766,666.67), plus reimbursement of reasonable costs. *Id.* ¶110. This Settlement is not contingent on approval of the request for attorneys' fees, costs, or Service Awards, and if the Court denies the requests or grants amounts less than what were requested, the remaining provisions of the Agreement shall remain in force. *Id.* ¶111. The provision for attorneys' fees and costs was negotiated after all material terms of the Settlement. *Id*.

## III.    <u>ARGUMENT</u>

### A.      THE PROPOSED SETTLEMENT MEETS THE PRELIMINARY APPROVAL STANDARD

The Second Circuit has noted that the policy favoring settlement is strong, "particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d. Cir. 2005). "A district court may approve a settlement proposal that binds class members only 'after a hearing and on finding that it is fair, reasonable, and adequate.'" *Moses v. N.Y. Times, Co.*, 79

F.4th 235, 242 (2d Cir. 2023) (quoting FRCP 23(e)(2)). In doing so, the Court must consider the following factors:

(A) the class representative and class counsel have adequately represented the class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:
   (i) the costs, risks, and delay of trial and appeal;
   (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims;
   (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
   (iv) any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

FRCP 23(e)(2). *See also In re Canon U.S. Data Breach Litig.*, No. 20-CV-6239-AMD-SJB, 2023 WL 7936207, at *3 (E.D.N.Y. Nov. 15, 2023) (Bulsara, M.J.) (applying Rule 23(e)(2) factors to preliminarily approve data breach settlement).

Common-law criteria preceded the Rule 23(e)(2) factors. *Moses*, 79 F.4th at 242. Courts in the Second Circuit also consider the factors set forth in *City of Detroit v. Grinnell Corp.* in evaluating the adequacy of a class action settlement:

(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). Rule 23(e)(2)'s first two procedural (Rule 23(e)(2)(A)-(B)) and last two substantive considerations (Rule 23(e)(2)(C)-(D)) were "'not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance.'" *Moses*, 79 F.4th at 242-43 (quoting Rule 23(e)(2) Advisory Committee's Note to 2018 Amendment).

These factors are to be considered "holistically," with the *Grinnell* factors "remain[ing] a useful framework for considering the substantive fairness of a settlement." *Id.* at 243. *See also Canon*, 2023 WL 7936207, at *3. Thus, the overlapping Rule 23(e)(2) and *Grinnell* factors are addressed below. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019) (Rule 23(e)(2) "factors add to, rather than displace," the traditional Second Circuit factors).

Preliminary approval is governed by a "likelihood standard," requiring the Court to assess whether the parties have shown that "the court will likely be able to grant final approval and certify the class." *Id.* at 28 n.21. "'[T]he granting of [preliminary approval] is not tantamount to a finding that the settlement is fair and reasonable. It is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness.'" *Canon*, 2023 WL 7936207, at *3 (citation omitted). *See also Monzon v. 103W77 Partners, LLC*, 13-cv-5951-AT, 2014 WL 6480557, at *1 (S.D.N.Y. Oct. 15, 2014) ("Preliminary approval requires only an 'initial evaluation' of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties." (citations omitted)). "If the proposed settlement appears to fall within the range of possible approval, the court should order that the class members receive notice of the settlement." *Manley v. Midan Rest. Inc.,* No. 14-cv-1693-HBP, 2016 WL 1274577, at *8 (S.D.N.Y. Mar. 30, 2016) (citation omitted).

### 1. Plaintiffs and Class Counsel Have Adequately Represented the Settlement Class – Rule 23(a)(2)(A)

In judging the Settlement's procedural fairness, the Court should first consider and conclude the Class Representatives and Class Counsel "have adequately represented the class." Rule 23(e)(2)(A). As with Rule 23(a)(4)'s adequacy of representation requirement, to satisfy Rule 23(e)(2)(A) Plaintiffs must establish (1) there is no antagonism or conflict of interest between the

Class Representatives and other members of the Settlement Class; and (2) Class Counsel and Class Representatives are competent, willing, and able to protect the interests of absent Settlement Class members. *Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 378 (2d Cir. 1997); *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. at 30. Here, all Settlement Class Members and the Class Representatives are potentially affected by the same Data Incident and thus have common interests. Joint Decl. ¶17. Moreover, Class Representatives have ably represented the Settlement Class, maintaining contact with Class Counsel and answering questions, reviewing and approving pleadings, assisting in the Action's investigation, and reviewing and approving the Settlement documents. *Id.*; *Lee*, 2025 WL 3523134, at *5.

Class Counsel have also vigorously pursued the Settlement Class' interests in securing a Settlement bringing immediate, valuable benefits, while avoiding the risks of continued litigation. Joint Decl. ¶18. To do so, they relied on their extensive class action experience, including in analogous data breach cases, their detailed investigation of this Action, and informal discovery exchanged in connection with Settlement negotiations, and ultimately negotiated a favorable recovery for the Settlement Class. *Id.* Class Representatives and Settlement Class Members are all eligible to elect Settlement Class Member Benefits. *Id.* Moreover, Defendant implemented additional security measures at its own expense that further protect Personal Information. Agreement ¶81. This weighs in favor of Preliminary Approval. *See Lee*, 2025 WL 3523134, at *5 (noting class counsel's experience).  As such, Rule 23(e)(2)(A) supports Final Approval.

### 2. The Settlement Was Negotiated at Arm's Length and Aided by a Respected and Experienced Mediator – Rule 23(e)(2)(B)

The next procedural consideration is whether the Settlement was "negotiated at arm's length." Rule 23(e)(2)(B). Recognizing the benefits of early resolution, the Parties began discussing the possibility of settlement. Joint Decl. ¶9. The Parties scheduled a mediation session

with Marc E. Isserles, Esq. of JAMS. *Id.* ¶12. Before mediation, the Parties engaged in informal

discovery and exchanged mediation briefs, enabling them to better evaluate the merits of Plaintiffs'

claims and the strengths of Defendant's defenses. *Id.* ¶11. On April 16, 2026, the Parties engaged

in a full-day mediation session. *Id.* ¶13. Under Mr. Isserles' guidance, the Parties ultimately agreed

on the material Settlement terms at arm's length. *Id.* Mr. Isserles' involvement further supports the

finding of procedural fairness via arm's length negotiations. *See, e.g.*, *In re GSE Bonds Antitrust

Litig.*, 414 F.Supp.3d 686, 699 (S.D.N.Y. 2019) (Rule 23(e)(2)(B) satisfied because of mediator's

involvement and parties' sophisticated and capable counsel). *See also* 4 Alba Conte & Herbert

Newberg, NEWBERG ON CLASS ACTIONS §13:50 (4th ed. 2002).

> **3. The Settlement Benefits Provided Are Adequate Relief Given the Complexity of the Case and Risks of Continued Litigation – Rule 23(e)(2)(C) and *Grinnell* Factors 1, 4, 5, 6, 8, and 9.**

Under Rule 23(e)(2)(C), courts consider whether the class relief is adequate to assess the

settlement's substantive fairness. This factor overlaps with the first, fourth, fifth, sixth, eighth, and

ninth *Grinnell* factors, addressing the complexity, expense, and likely duration of the litigation and

the range of reasonableness of the settlement fund in light of the best possible recovery and to a

possible recovery in light of all the attendant risks of litigation. 495 F.2d at 463. In assessing this

factor, "the Court should balance the benefits afforded the Class, including the immediacy and

certainty of a recovery, against the continuing risks of litigation." *Flores v. Mamma Lombardi's

of Holbrook, Inc.*, 104 F.Supp.3d 290, 303 (E.D.N.Y. 2015). There is "a range of reasonableness

with respect to a settlement" that "recognizes the uncertainties of law and fact in any particular

case and the concomitant risks and costs necessarily inherent in taking any litigation to

completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). The settlement amount's

adequacy should not be judged on the best of all possible worlds, but rather in light of the action's

strengths and weaknesses. *See Meredith Corp. v. SESAC, LLC*, 87 F.Supp.3d 650, 665-66

(S.D.N.Y. 2015). "The greater the 'complexity, expense and likely duration of the litigation,' the stronger the basis for approving a settlement." *Id.* at 663 (citations omitted). Consumer class action lawsuits by their very nature are complex, expensive, and lengthy. *See, e.g.*, *Dupler v. Costco Wholesale Corp.*, 705 F.Supp.2d 231, 239 (E.D.N.Y. 2010).

Rule 23(e)(2)(C)(i) and the first, fourth, fifth, and sixth *Grinnell* factors support Final Approval. The costs, risks, and delay of trial and appeal are significant in all data security cases, but particularly in cases involving facts such as these. Joint Decl. ¶20. While Plaintiffs are confident in the merits of their claims, the risks involved in prosecuting a class action through trial cannot be disregarded. *Id*. Due at least in part to their cutting-edge nature and the rapidly evolving law, data security cases like this one generally face substantial hurdles—even just to make it past the pleading stage. *See, e.g.*, *Logan v. Marker Group, Inc.*, No. 4:22-CV-00174, 2024 WL 3489208 (S.D. Tex. July 18, 2024) (dismissing all but one claim); *Dougherty, et al. v. Bojangles Restaurants, Inc.*, No. 25-CV-00065, DE 34 (W.D.N.C. Sep. 30, 2025) (dismissing case in its entirety at pleading stage). *See also In re Target Corp. Customer Data Sec. Breach Litig.*, MDL No. 14-2522 (PAM/JJK), 2015 WL 7253765, at *2 (D. Minn. Nov. 17, 2015) (legal issues involved in data breach litigation "are cutting-edge and unsettled . . . many resources would necessarily be spent litigating substantive law as well as other issues"). Plaintiffs also anticipate substantial additional costs should litigation continue, including expert fees and discovery. Joint Decl. ¶20. Plaintiffs would need to defeat a motion to dismiss, counter a later motion for summary judgement, and both gain and maintain certification of a class, with a near inevitable interlocutory appeal attempt. *Id*.

Class certification is another hurdle. *See, e.g.*, *Maldini v. Marriott Int'l, Inc.*, 140 F.4th 123 (4th Cir. 2025) (reversing reinstated class certification); *Marriott Int'l, Inc. v. Accenture LLP*, 78

- 13 -

F.4th 677, 688 (4th Cir. 2023) (vacating class certification in data breach case); *Theus v. Brinker Int'l, Inc.*, No. 3:18-cv-686-TJC-MCR, 2025 WL 1786346, at \*4 (M.D. Fla. June 27, 2025) (denying class certification in a data breach case); *In re Blackbaud, Inc., Customer Data Breach Litig.*, No.: 3:20-mn-02972-JFA, 2024 WL 2155221 (D.S.C. May 14, 2024) (same). To date, to Class Counsel's knowledge, no data breach class action has been tried. Joint Decl. ¶21.

Through the Settlement, Plaintiffs and Settlement Class Members avoid these and other risks, including potentially losing at trial, and gain significant benefits for the Settlement Class while avoiding the risk of receiving nothing, if the case continued. The Settlement provides immediate and substantial value, including a $5,300,000.00 non-reversionary all-cash Settlement Fund for the benefit of 662,796 potential Settlement Class Members. Indeed, this Settlement compares very favorably, and in fact exceeds, many similar common fund data breach settlements. *See, e.g.*, *In re CaptureRx Data Breach Litig.,* No. 5:21-cv-00523-OLG (W.D. Tex.) ($4,750,000 common fund for 2,400,000 class members); *Heath, et al. v. Insurance Technologies Corp., et al.*, No. 3:21-cv-01444-N (N.D. Tex.) ($11,000,000 common fund for 4,000,000 class members); *Kostka v. Dickey's Barbecue Restaurants, Inc.*, No. 3:20-cv-3424 (N.D. Tex.) ($2,350,000 common fund for 725,000 class members); *In re: Berry, Dunn, McNeil & Parker Data Security Incident Litig.*, No. 2:24-cv-00146-JAW (D. Me. June 6, 2025) ($7.25 million fund for 2,204,639 class members); *In re Mednax Services, Inc.*, *Customer Data Sec. Breach Litig.*, No. 2021-MD-02994 (S.D. Fla.) ($6,000,000 for 2,700,000 class members).

Additionally, given the substantial litigation risks described above, all Settlement Class Members are entitled to Claim a Cash Payment (up to $5,000.00 for documented losses and up to $75.00 in flat cash, both subject to *pro rata* adjustments based on the number of Valid Claims) and Credit Monitoring. Those amounts are well within the range of reasonableness of a settlement fund

in light of the best possible recovery. *Grinnell*, 495 F.2d at 463 (eighth and ninth factors). These dollar amounts are on par with or exceed those approved in other data breach class action settlements. *See, e.g., In re Arthur J. Gallagher Data Breach Litig.*, No. 22-CV-00137 (N.D. Ill.) (final approval of a settlement where class members received $6,000 for documented losses or $100.00 alternate cash and credit monitoring); *Sherwood, et al. v. Horizon Actuarial Services LLC*, Case No. 1:22-CV-01495-ELR (N.D. Ga.) (final approval of a settlement where class members received $5,000 for documented losses or $50.00 alternate cash with no credit monitoring offered).

In applying the eighth *Grinnell* factor, "the settlement must be judged 'not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case.'" *Shapiro v. JPMorgan Chase & Co.*, No. 11-cv-8331-MHD, 2014 WL 1224666, at *11 (S.D.N.Y. Mar. 24, 2014) (quoting *In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd* 818 F.2d 145 (2d Cir. 1987)). Indeed, as the Second Circuit recognized, because of the riskiness of litigation, "[i]n fact there is no reason…why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell*, 495 F.2d at 455 n.2.

Additionally, Defendant's security enhancements, paid separately from the Settlement Fund, add substantial non-monetary benefits to protect the Settlement Class Members' Personal Information. This is an important, additional benefit.

The entire Settlement Fund will be effectively distributed through the robust Claim Process through which the experienced Settlement Administrator will approve Valid Claims. FRCP 23(e)(2)(C)(ii); SA ¶¶ 50-67. Cash Payments will be made by electronic means or paper check, and Notices will be sent with instructions to enroll in Credit Monitoring. Agreement. *Id.* ¶¶58, 67.

In *Moses*, 79 F.4th at 244, the Second Circuit addressed Rule 23(e)(2)(C)(iii)'s requirement

- 15 -

that the Court take into account "the terms of any proposed award of attorneys' fees." "The symbiotic review of proposed relief and attorneys' fees aligns with '[t]he express goal of [our] *Grinnell* opinions [which] was to prevent unwarranted windfalls for attorneys.'" *Id.* (quoting *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 49 (2d Cir. 2000)). Thus, the settlement's terms and class counsel's attorneys' fee award are required to be reviewed "in tandem." *Id.* In 2025, the Second Circuit went further to "clarify that this tandem analysis of class relief and attorney's fees requires courts to compare the proportion of total recovery allocated to the class to the proportion of total recovery allocated to class counsel." *Kurtz v. Kimberly-Clark Corp.*, 142 F.45th 112, 115 (2d Cir. 2025). Neither *Moses* nor *Kurtz* involved an attorneys' fee request from a non-reversionary, common settlement fund. Here, Class Counsel's requested attorneys' fee of one-third of the non-reversionary, common Settlement Fund does *not* reveal an "imbalance as to cast doubt on the settlement's fairness." *Kurtz*, 142 F.45th at 119.

As to "the terms of any proposed award of attorneys' fees," in the Second Circuit, an award of attorneys' fees is based on "the total funds made available, whether claimed or not" because "[t]he entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class." *Masters*, 473 F.3d at 437. Class Counsel will apply for attorneys' fees in the amount of one-third of the Settlement Fund, an amount consistent with the percentage of common funds awarded in other class action settlements within the Second Circuit and throughout the country. *See, e.g.*, *Rosenfeld v. Lenich*, No. 18-CV-6720 (NGG) (PK), 2021 WL 508339, at *6 (E.D.N.Y. Feb. 4, 2021) ("Courts in this Circuit routinely find that requests for attorney's fees totaling one-third of the settlement fund are well within the range of reasonableness."). Many courts have granted such awards in data breach class actions. *See, e.g., Krant v. UnitedLex Corp.*, No. 23-2443-DDC-TJJ, 2024 WL 5187565, *6 (D. Kan. Dec. 19, 2024)

(awarding one-third fee, and collecting data breach cases from around the country); *In re Arthur J. Gallagher Data Breach Litig.*, No. 22-CV-00137, DE 128 (N.D. Ill.) (Feb. 27, 2025) (same); *In re Planet Home Lending, LLC Data Breach*, No. 3:24-cv-127 (KAD) (D. Conn.), DE 48 (same); *Garza v. HealthAlliance, Inc.*, No. 72450/2023 (NY Sup. Ct., Westchester Cty.) (same); *McNally, et. al. v. Infosys McCamish Systems, LLC*, No. 1:24-CV-00995-JPB (N.D. Ga.), DE 81 (same); *In re Fortra File Transfer Software Data Sec. Breach Litig.*, No. 24-MD-03090, 2025 WL 2675178, at *13-14 (S.D. Fla. Sept. 17, 2025) (same); *Alliance Ophthalmology, PLLC v. ECL Group, LLC*, No. 1:22-CV-296, 2024 WL 3203226, *16 (M.D.N.C. June 27, 2024) (awarding one-third of common fund because amount was "comparable to awards in other data privacy class actions").

Rule 23(e)(2)(C)(iv) is also satisfied because all Settlement terms are stated in the Agreement.

### 4. The Settlement Treats Settlement Class Members Equitably - Rule 23(e)(2)(D)

The Settlement does not discriminate between any segments of the Settlement Class. Joint Decl. ¶22. All Settlement Class Members will automatically receive an enrollment code for one year of Credit Monitoring; are eligible to submit Claims for Cash Payments; and will benefit from Defendant's security enhancements to protect their Personal Information. *Id.* This equitable treatment includes the reasonable Service Awards to the Class Representatives. *Moses*, 79 F.4th at 244-45 (requiring consideration of incentive awards a/k/a service awards when analyzing Rule 23(e)(2)(D)). Service/incentive awards are permitted in the Second Circuit: "Incentive awards encourage class representatives to participate in class action lawsuits, which are 'designed to provide a mechanism by which persons, whose injuries are not large enough to make pursuing their individual claims in the court system cost efficient, are able to bind together with persons suffering the same harm and seek redress for their injuries.'" *Id.* at 253, 256. For their commitment

to the Action, Plaintiffs may reasonably request Services Awards of $2,500.00 each ($15,000.00 total). *See, e.g.*, *McLaughlin v. IDT Energy*, No. 14-cv-417 (ENV) (RML), 2018 WL 3642627, at *20 (E.D.N.Y. July 30, 2018) ("Courts in this circuit regularly approve service awards, ranging from as low as $1,000 to as high as $25,000, in consumer class action settlements; generally, however, award between $1,000 and $10,000 are more typical." (collecting cases)).

Plaintiffs are aware that in *Canon*, 2023 WL 7936207, at *5, the court indicated it would judge the reasonableness of the incentive award amounts requested at the final approval hearing. Plaintiffs have been instrumental in assisting Class Counsel as Class Representatives. Joint Decl. ¶33. They initiated and remained in contact with Class Counsel, considered and reviewed the pleadings and Agreement, supervised and monitored Class Counsel, provided background documents, and followed the litigation's progress to ensure the Settlement Class receive the best recovery possible, given the risks of the Action. *Id.* The Class Representatives were prepared to complete their responsibilities, including being deposed and testifying at trial, if needed. *Id.*

Accordingly, Rule 23(e)(2)(D) weighs in favor of Final Approval.

### 5. The Remaining Grinnell Factors (2, 3, and 7) Support Preliminary Approval

The second *Grinnell* factor addresses the Settlement Class' reaction. "A positive reaction of the class to the proposed settlement favors its approval by the Court." *Meredith*, 87 F. Supp. 3d at 663. "'It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy.'" *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720 (MKB) (JO), 2019 WL 6875472, at *16 E.D.N.Y. Dec. 16, 2019) (citation omitted). This factor is best judged after the Settlement Class is given Notice of the Settlement. *See Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 34 (E.D.N.Y. 2006). Class Counsel are confident the Settlement will be very well received

given the available Settlement Class Member Benefits. Joint Decl. ¶29. The proposed Class Representatives approve of this proposed Settlement. *Id.*

The third *Grinnell* factor considers the stage of the proceedings and amount of discovery completed, with a "'focus[ ] on whether the plaintiffs obtained sufficient information through discovery to properly evaluate their case and to assess the adequacy of any settlement proposal.'" *Schutter v. Tarena Int'l, Inc.*, No. 21-CV-3502 (PKC) (RML), 2024 WL 4118465, at *11 (E.D.N.Y. Sept. 9, 2024) (citation omitted). While the Action settled early, the Parties' negotiations included an exchange of informal discovery before mediation. *See In re IMAX Sec. Litig.*, 283 F.R.D. 178, 190 (S.D.N.Y. 2012) ("[F]ormal discovery need not have necessarily been undertaken yet by the parties.").

In addition to Class Counsel's extensive legal and factual research into the merits of Plaintiffs' claims (and likelihood of protracted litigation), they filed a detailed consolidated complaint; retained and conferred with experts; obtained pre-mediation discovery, exchanged mediation statements; and mediated before Marc E. Isserles of JAMS. Joint Decl. ¶32. Due to this work, the depth of Plaintiffs' and Class Counsel's knowledge of the claims' strengths and potential weaknesses is more than adequate to support the Settlement. *Id*. Class settlements are routinely approved early in litigation because it allows the class to recover without the delay such complex cases usually entail, especially where, as here, the settlements were brought about by the skill and diligence of Class Counsel in evaluating the claims and damages. Early settlement where, as here, the Parties are adequately informed to negotiate is to be commended. *See*, *e.g.*, *Hernandez v. Merrill Lynch & Co.,* 2013 U.S. Dist. LEXIS 42681, *14 (S.D.N.Y. Mar. 21, 2013) ("courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources

- 19 -

elsewhere."); *Castagna v. Madison Square Garden, L.P.*, No. 09-cv-10211 (LTS)(HP), 2011 WL 2208614, at *6 (S.D.N.Y. June 7, 2011) (commending Plaintiffs' attorneys for negotiating early settlement and avoiding hundreds of hours of legal fees).

Finally, for the seventh *Grinnell* factor, the Defendant's financial obligations under the Settlement are substantial. A "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Viafara v. MCIZ Corp.*, No. 12-cv-7452-RLE, 2014 WL 1777438, at *7 (S.D.N.Y. Apr. 30, 2014) (citation omitted). "Courts have recognized that a [defendant's] ability to pay is much less important than the other *Grinnell* factors, especially where the other factors weigh in favor of approving the settlement." *In re Sinus Buster Prods. Consumer Litig.*, No. 12–CV–2429 (ADS)(AKT), 2014 WL 5819921, at *11 (E.D.N.Y. Nov. 10, 2014) (citations omitted).

Based on the foregoing, the Court should find that it is likely to conclude the Settlement is fair, reasonable, and adequate under Rule 23(e)(2). FRCP 23(e)(1)(B)(i); *Canon*, 2023 WL 7936207, at *4 n.6. Thus, Preliminary Approval should be granted.

## B.  THE SETTLEMENT CLASS SHOULD BE CERTIFIED

Certification of a settlement class must satisfy the requirements of FRCP 23(a), as well as at least one of the provisions of FRCP 23(b). *See In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 242 (2d Cir. 2012). When settlement class certification is sought, "courts must take a liberal rather than a restrictive approach." *Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 157-58 (E.D.N.Y. 2009). As demonstrated below, the proposed Settlement Class satisfies Rule 23(a), 23(b)(2) and 23(b)(3).

### 1.  The Requirements of Rule 23(a) Are Satisfied

Rule 23(a) permits an action to be maintained as a class action if (i) the class is so numerous

that joinder of all members is impracticable; (ii) there are questions of law or fact common to the class; (iii) the claims and defenses of the representative parties are typical of the claims or defenses of the class; and (iv) the representative parties will fairly and adequately protect the interests of the class. FRCP 23(a). The Settlement Class meets these requirements.

### a)    Numerosity

Plaintiffs must show the proposed class is "so numerous that joinder of all [its] members is impracticable." FRCP 23(a)(1). In the Second Circuit, "a proposed class of more than forty members presumptively satisfies the numerosity requirement." *Kelen v. World Fin. Network Nat. Bank*, 295 F.R.D. 87, 92 (S.D.N.Y. 2013) (collecting cases). *See also Canon*, 2023 WL 7936207, at *2 (numerosity satisfied with over 40,000 settlement class members). Here, the Settlement Class is estimated to be 662,796 individuals. Joint Decl. ¶28. Numerosity is met.

### b)    Commonality

Plaintiffs must show "questions of law or fact common to the [proposed] class" exist. FRCP 23(a)(2). Commonality requires the proposed settlement class members' claims all centrally "depend upon a common contention," which "must be of such a nature that it is capable of class wide resolution," meaning that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *WalMart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "[F]or purposes of Rule 23(a)(2) even a single common question will do." *Id.* at 359 (citations omitted). Plaintiffs need only show that their injuries stemmed from Defendant's "unitary course of conduct." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 85 (2d Cir. 2015). Here, Plaintiffs' claims turn on the adequacy of Defendant's data security in protecting the Settlement Class' Personal Information. Joint Decl. ¶30. Evidence to resolve that claim does not vary among Settlement Class Members, and so can be fairly resolved, for purposes

of settlement, for all Settlement Class Members at once. *Id.* Thus, commonality is satisfied. *Canon*, 2023 WL 7936207, at *2 (commonality in data breach class action).

### c)      Typicality

Plaintiffs must show the proposed class representatives' claims "are typical of the [class'] claims." FRCP 23(a)(3). The focus is that "the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented." *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993). "[D]ifferences in the degree of harm suffered, or even in the ability to prove damages, do not vitiate the typicality of a representative's claims." *In re Nissan Radiator/Transmission Cooler Litig.*, No. 10-cv-7493-VB, 2013 WL 4080946, at *19 (S.D.N.Y. May 30, 2013); *Fogarazzo v. Lehman Bros., Inc.*, 232 F.R.D. 176, 180 (S.D.N.Y. 2005) ("The typicality requirement is not demanding.").

Here, typicality is met because the same allegedly unlawful conduct by Defendant was directed at, or affected, Plaintiffs and the members of the proposed Settlement Class. *Robidoux*, 987 F.2d at 936–37. Their claims as individuals whose Personal Information may have been impacted in the Data Incident are typical of the Settlement Class. *See Canon*, 2023 WL 7936207, at *2 (typicality in data breach class action); *In re Heartland Payment Sys., Inc. Client Data Sec. Breach Litig.*, 851 F.Supp.2d 1040, 1054 (S.D. Tex. 2012) (finding typicality in data breach action).

### d)      Adequacy of Representation

Plaintiffs must show that the proposed Class Representatives will "fairly and adequately protect the interests of the class." FRCP 23(a)(4). Plaintiffs must demonstrate that: (1) the class representatives do not have conflicting interests with other class members; and (2) class counsel is "qualified, experienced and generally able to conduct the litigation." *Marisol A. by Forbes*, 126

F.3d at 378. Plaintiffs must show that "the members of the class possess the same interests" and that "no fundamental conflicts exist" between a class's representative(s) and its members. *Charron v. Wiener*, 731 F.3d 241, 249 (2d Cir. 2013). Here, Plaintiffs possess the same interests as the proposed Settlement Class because they were all allegedly injured in the same manner from the same Data Incident. *Canon*, 2023 WL 7936207, at *2 (plaintiffs adequate in data breach action).

In appointing class counsel, courts must consider (i) counsel's work in identifying or investigating claims; (ii) counsel's experience in handling the types of claims asserted; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. FRCP 23(g)(1)(A). As the Court determined in appointing them interim class counsel in this Action, proposed Class Counsel possess a long and proven track record of the successful prosecution of class actions, including data breach cases, and numerous appointments as class counsel. Joint Decl. ¶ 6. *Canon*, 2023 WL 7936207, at *3 (applying Rule 23(g) to find plaintiffs' experienced data breach counsel adequate to represent settlement class).

Class Counsel have worked cooperatively and efficiently and have devoted substantial time and resources to this case to (1) investigate the Data Incident; (2) research and evaluate the appropriate legal claims; (3) interview individuals about their experiences; (4) prepare and file pleadings, including the consolidated complaint; (5) engage liability and damages experts; (6) conduct informal discovery (7) prepare mediation materials and participate in mediation; and (6) negotiate the proposed Settlement and prepare the Agreement and exhibits. Joint Decl. ¶23. With their commitment to litigating these claims, the Court should appoint them to serve as Class Counsel.

Accordingly, the requirements of Rule 23(a)(4), as well as the Rule 23(g) requirements for Class Counsel's qualifications, are satisfied.

### C.    The Rule 23(b)(2) and 23(b)(3) Requirements Are Satisfied

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem Prods. v. Windsor*, 521 U.S. 591, 614 (1997). Plaintiffs seek certification under Rule 23(b)(2) and 23(b)(3) for settlement purposes only.

FRCP 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Defendant has represented that it undertook remediation measures at its own cost following the Data Incident, the benefit of which applies generally to the Settlement Class. *See Hyland v. Navient Corp.*, 48 F.4th 110, 118-120 (2d Cir. 2022) (noting defendant's business-practice enhancements would benefit the entire settlement class).

FRCP 23(b)(3), addressed below, requires that "questions of law or fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

### 1.    Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623 (citation omitted). Predominance exists where the questions that are capable of common proof are "more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015). "[T]o meet the predominance requirement . . . a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof."

*In re Nassau Cty Strip Search Cases*, 461 F.3d 219, 227-28 (2d Cir. 2006) (citations omitted).

For a request for settlement-only class certification, concerns about whether individual issues "would present intractable management problems" at trial drop out because "the proposal is that there be no trial." *Amchem Prods.*, 521 U.S. at 620. As a result, "the predominance inquiry will sometimes be easier to satisfy in the settlement context." *Tart v. Lions Gate Entm't Corp.*, No. 14-cv-8004-AJN, 2015 WL 5945846, at *4 (S.D.N.Y. Oct. 13, 2015) (citation omitted). Courts have found similar settlement classes to meet the preponderance requirement in data breach cases. "Indeed, the focus on a defendant's security measures in a data breach class action is the precise type of predominant question that makes class-wide adjudication worthwhile." *In re Yahoo! Inc. Client Data Sec. Breach Litig.*, 2020 WL 4212811, at *7 (N.D. Cal. July 22, 2020) (quotation marks omitted). *See also Canon*, 2023 WL 7936207, at *2 (predominance in data breach action).

Here, for settlement purposes, central common questions predominate over any individual questions, including whether Defendant had a duty to the Settlement Class to prevent exposure of their Personal Information, and whether Defendant took reasonable actions to prevent the Data Incident. These issues are subject to "generalized proof" and "outweigh those issues that are subject to individualized proof." *Nassau*, 461 F.3d at 227–28 (citation omitted).

### 2.      Superiority

FRCP 23(b)(3) also requires Plaintiffs to show that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Here, the class action mechanism is superior to individual actions. First, "[t]he potential class members are both significant in number and geographically dispersed" and "[t]he interest of the class as a whole in litigating the many common questions substantially outweighs any interest by individual members in bringing and prosecuting separate actions." *Meredith Corp.*, 87 F.Supp.3d at 661 (citation

omitted). A class action is also superior here because "it will conserve judicial resources" and "is more efficient for Class Members, particularly those who lack the resources to bring their claims individually." *Zeltser v. Merrill Lynch & Co.*, 2014 WL 4816134, at *3 (S.D.N.Y. Sept. 23, 2014) (citation omitted).

Adjudicating individual actions here is impracticable: the amount in dispute per person is too small given the complexity, including costs for document review, technical issues, and experts. Individual damages are insufficient to allow such actions—at least not with the aid of adequate counsel. Such prosecution would delay resolution and may lead to inconsistent rulings. "Employing the class device here will not only achieve economies of scale for Class Members but will also conserve judicial resources and preserve public confidence in the integrity of the system by avoiding the waste and delay repetitive proceedings and preventing inconsistent adjudications." *Id.* (citations omitted). For all of the foregoing reasons, a class action is superior to individual suits. *See Canon*, 2023 WL 7936207, at *2 (superiority in data breach action).

Thus, the Rule 23(a), 23(b)(2), and 23(b)(3) requirements are satisfied, and the Court should preliminarily certify the Settlement Class because it is likely to certify it for purposes of judgment. FRCP 23(e)(1)(B)(ii).

### D.   THE COURT SHOULD APPROVE THE PROPOSED NOTICE PROGRAM AND CLAIMS PROCESS

FRCP 23(e)(1)(B) "requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.312 (2004). "The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Visa*, 396 F.3d at 113 (citations omitted). "For any class certified under Rule

23(b)(3), the court must direct to class members the best notice practicable under the circumstances" who "can be identified through reasonable effort." FRCP 23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). The best notice practicable is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). *See also Canon*, 2023 WL 7936207, at \*6. Moreover, Fed. R. Civ. P. 23(h)(1) requires: "Notice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner."

The Notice Program satisfies the foregoing criteria. The Parties negotiated the form of the Notices. Joint Decl. ¶36. Notice will be disseminated to all Settlement Class members, whose names and postal addresses can be identified with reasonable effort from Defendant's records and the Settlement Administrators' reasonable tracing procedure if necessary. In addition, Simpluris will administer the Settlement Website containing relevant Settlement information. Further, the Postcard Notice and Long Form Notice include, among other information: a description of the material terms of the Settlement; how to submit a Claim Form; Claim Form Deadline; Opt-Out Deadline for Settlement Class Members to opt out of the Settlement; Objection Deadline for Settlement Class Members to object to the Settlement and/or Application for Attorneys' Fees, Costs, and Service Awards; Final Approval Hearing date; and the Settlement Website address at which Settlement Class Members may access this Agreement and other related documents and information. SA ¶¶52, 54; FRCP 23(c)(2)(B). Finally, the Notice Program satisfies Rule 23(h)(1), as it notifies the Settlement Class that Class Counsel may apply to the Court for an award of

attorneys' fees of up to one-third of the Settlement Fund, plus reimbursement of costs. *Id.*, Exs. 1-2, 4. Thus, the Court should approve the Notice Program, including the form and content of the Notices. Agreement, Exs. 1-4. *See Canon*, 2023 WL 7936207, at *6 (approving similar notice program).

Moreover, the Court should approve the Settlement Administrator to implement the Notice Program and oversee the Claims Process.  After due consideration, Simpluris was selected to serve as the proposed Settlement Administrator. Simpluris is an established and well-regarded administrator and has extensive experience in data breach cases. Joint Decl. ¶35.

## IV.    PROPOSED SCHEDULE OF EVENTS

Plaintiffs respectfully propose the schedule below for the Court's review and approval. If the Court agrees, Plaintiffs request that the Court schedule the Final Approval Hearing for 130 days after entry of the Preliminary Approval Order or the soonest available date thereafter.

| | |
|---|---|
| **Notice Program Begins** | Within 45 days after the Court enters the Preliminary Approval Order |
| **Notice Program Ends** | Date to be determined by the Court in Preliminary Approval Order |
| **Deadline to file Motion for Final Approval and Application for Attorneys' Fees, Costs, and Service Awards** | 95 days after Court enters Preliminary Approval Order |
| **Opt-Out Deadline** | 115 days after Court enters Preliminary Approval Order |
| **Objection Deadline** | 115 days after Court enters Preliminary Approval Order |
| **Deadline to Submit Claim Forms** | 130 days after Court enters Preliminary Approval Order |
| **Final Approval Hearing** | _____, ____ 2026, at __:__. |

- 28 -

## V.    CONCLUSION

Plaintiffs respectfully request entry of the proposed Preliminary Approval Order, attached

as Exhibit 6 to the Agreement.

Dated: June 22, 2026                Respectfully submitted,

/s/ Gregory Haroutunian
Gregory Haroutunian (N.Y. Bar No. 5187430)
**EMERY | REDDY, PC**
333 University Avenue, Suite 200
Sacramento, CA 95825
916.823.6955 (Tel)
206.441.9711 (Fax)
gregory@emeryreddy.com

Mariya Weekes (*pro hac vice*)
**MILBERG PLLC**
201 Sevilla Avenue, 2nd Floor
Coral Gables, FL 33134
Tele: 954-647-1866
mweekes@milberg.com

***Interim Co-Lead Class Counsel***


## CERTIFICATE OF COMPLIANCE

In accordance with Local Rule 7.1(c), I hereby certify that the foregoing Memorandum of

Law contains 8,746 words, excluding the parts of the Memorandum exempted by the Local Rules.

/s/ *Gregory Haroutunian*
Gregory Haroutunian

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on June 22, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

/s/ *Gregory Haroutunian*
Gregory Haroutunian
